25035. KIMBROUGH *v.* GAINESVILLE MATHER CO. *et al.*

DECIDED JULY 11, 1936.

*Dorough, Hope & Fox, Ed Quillian,* for plaintiff.
*Wheeler & Kenyon,* contra.

MacINTYRE, J. Mrs. W. H. Kimbrough Jr. sued Gainesville Mather Company, C. A. Kimbrough, O. M. Hendrix, C. W. Laws, Mather Brothers Company Inc., Cotton Mather, Roy Mather, and John Mather. The first exception is to the judgment disallowing an amendment to the petition; the second is to the judgment sustaining a general demurrer. By paragraph, the material parts of the original petition are substantially as follows:

2. Defendants "have injured and damaged . . petitioner in the sum of $4250. . ."

3. Gainesville Mather Company was incorporated with a capital stock of $30,000, each share of stock being of the par value of $100, for the purpose of conducting a retail furniture business in Gainesville, Georgia.

4. The subscribers to said stock, with the number of shares subscribed, follow: Petitioner 50 shares; C. A. Kimbrough 50 shares; J. R. Thaxton 35 shares; an unnamed party 1 share; Mather Brothers Company Inc., Cotton Mather, Roy Mather, and John Mather, 164 shares. Petitioner paid $5000 in cash for her fifty shares of stock.

5. All said parties paid in full for the stock subscribed by them, except Mather Brothers Company Inc., Cotton Mather, Roy Mather, and John Mather, who "paid $1000 and took over the balance of said . . stock," but "to whom and in what name said stock was issued petitioner is unable to say."

6. At the time Gainesville Mather Company was organized its officers were as follows: Cotton Mather, president, Roy Mather, first vice-president, and J. R. Meeks, secretary and treasurer.

7. Some months after Gainesville Mather Company opened for business Cotton Mather, "acting for himself and on his own account," purchased the stock, merchandise, and accounts of Hendrix & Laws, a partnership which "was considerably involved financially."

8. As part of the consideration of said purchase, Cotton Mather agreed with O. M. Hendrix and Charles W. Laws, the members of said partnership, to give each of them employment with the Gainesville Mather Company "at a . . stated salary . . for a . . stated time, said salaries to be paid by" said company. Said contract was made "without the consent of the management and without corporate authority," and without the knowledge of any one connected with said company, by "Cotton Mather, acting for himself while pretending to act in behalf of . . Gainesville Mather Company." Pending said negotiations, "C. A. Kimbrough had been installed as manager of the Gainesville Mather Company, and was in charge of its business . . and vested with exclusive powers of hiring and discharging all employees." When advised by Cotton Mather of his employment of said Hendrix and Laws, Kimbrough protested, but was "peremptorily ordered by . . Cotton Mather to take Hendrix in some capacity

and . . pay him a salary of $150 per month," and Laws "was placed by . . Cotton Mather in the ostensible employment of another concern of the City of Gainesville, to wit, Pilgrim Estes Company, at the expense of the Gainesville Mather Company in the sum of $150 per month."

9. "Cotton Mather purchased and took over said stock . . and the accounts of the said Hendrix & Laws for himself, or for himself and the Mather Brothers Company Inc., and John and Roy Mather." Cotton Mather "disposed of the stock of goods . . to other parties, and . . said accounts were placed for collection with said Gainesville Mather Company," and said company "was required by . . Cotton Mather to collect said accounts and pay the proceeds over to him, or to Mather Brothers Company Inc. without compensation, and . . the total . . expense of handling the stock of goods . . and the collection of the accounts . . was . . required to be paid by the Gainesville Mather Company . . to the detriment and damage of petitioner in the value of her stock."

10. Later, when it became necessary for the Gainesville Mather Company to dispense with the services of the said Hendrix, and when it refused to continue the payment of said Laws' salary, Laws and Hendrix entered suit against the Gainesville Mather Company "for the balance of salary due under the contract with the said Cotton Mather," and recovered judgments aggregating approximately $3000 against said company.

11. "One of the major prohibitions placed upon said Gainesville Mather Company. by . . Mather Brothers Company Inc., Cotton, John and Roy Mather, was that no order for the purchase of goods for said Gainesville Mather Company . . should be . . filled until first receiving the 'O. K.' of Mather Brothers Company Inc., or some of the Mathers." When said judgments were procured, "Gainesville Mather Company was in good standing with the trade . . and its credit was good," but as a result of said judgments its credit was lost, and "Mather Brothers Company Inc., which . . is owned and controlled by Cotton, John, and Roy Mather, . . refused to 'O. K.' any further orders, . . and refused to extend credit . . to . . Gainesville Mather Company,· because of said judgments, and the credit . . of . . Gainesville Mather Company was completely destroyed."

12. "After said judgments were entered of record . . , and while said causes were on appeal . . , all said defendants began a series of pretended and bogus sales to dispose of, remove, and secrete the stock . . and to transfer the books of account of the Gainesville Mather Company, and . . entered into a conspiracy to delete and deplete the stock and assets of the Gainesville Mather Company, and to remove the same from the jurisdiction of the court." The purpose of said conspiracy was accomplished to such an extent that Hendrix and Laws procured an injunction "against all of said defendants," and a receiver to be appointed. The inventory of said receiver disclosed that "said stock of goods and merchandise had been removed, sequestered, and deleted," and "the books of account . . pretendedly and wrongfully transferred to the extent that" said stock of the Gainesville Mather Company was reduced from a value of approximately $8000 to less than $2000, and the untransferred accounts "were practically worthless."

13. "At the time said conspiracy was entered into . . and suit hereinbefore referred to . . instituted, . . the Gainesville Mather Company was a going concern, carrying a stock of approximately $8000 in merchandise, and accounts . . collectible of over $20,000, and was prospering."

14. "As a result of said conspiracy . . and the suits filed by the said Hendrix and . . Laws, . . Mather Brothers Company Inc., and Cotton, John, and Roy Mather, the said Cotton Mather pretending to act . . in behalf of the Gainesville Mather Company, entered into negotiations with . . Hendrix and . . Laws, looking to a settlement of said suit and said judgments," and did agree to pay to said parties $700 in cash and employ them "in and about the business of the Gainesville Mather Company for a certain . . time . . at a certain salary per month;" the result of which was that Hendrix and Laws "were . . wished upon . . the Gainesville Mather Company at an unnecessary and enormous useless expense," and said company was required to pay Hendrix and Laws $700 in cash.

15. At first Cotton Mather demanded and received from Gainesville Mather Company a salary fixed at a maximum of $50 per month, but, "without corporate action, on the demand of . . Cotton Mather, this salary was increased from time to time until

he drew" from said company a salary of $157.50 per month, said salary being exorbitant, unauthorized, and illegally paid to and received by the said Cotton Mather, "to the detriment and deple- tion of the value of petitioner's stock, . . and especially does petitioner allege that said increase over . . $50 per month was illegal."

16. "Petitioner alleges that all of the transactions, negotiations, and manipulations hereinbefore set forth by and between any and all of said defendants and the said Hendrix and Laws were part and parcel of one grand scheme and conspiracy entered into by and between all of said defendants, whereby they entered into a conspiracy and conspired together to rape and wreck the Gainesville Mather Company and to delete and deplete its assets until its capital stock would become worthless, and that the said . . conspiracy was hatched in and emanated from the fertile brain of . . Cotton Mather, and was a scheme and conspiracy entered into by all of said defendants for the purpose of defrauding your petitioner of the value of her stock in the Gainesville Mather Company, and for the purpose of procuring the same at a nominal value."

18. As a result of "being constantly harried and oppressed by . . the conspiracies," Gainesville Mather Company, which was "dominated by the Mathers and Mather Brothers Company Inc.," lost its credit and standing, and its stock and assets were "depleted to such an extent that the same were practically worthless and said Gainesville Mather Company was unable to carry on."

19. As a result of said conspiracy petitioner "was finally, in order to avoid a total loss . . and . . salvage anything from the wreck, forced to sell . . to Mather Brothers Company Inc. . . the stock for which she . . paid $5000 in cash . . for $750," to her injury and damage "in the loss in value of said stock of $4250."

It appears from paragraph 18 that the result of the alleged conspiracy was the destruction of the credit and standing of the Gainesville Mather Company and the depletion of its stock and assets to such an extent that "the same were practically worthless, and . . Gainesville Mather Company was unable to carry on." In short, the primary injury was to the Gainesville Mather Company. Though the plaintiff in the instant case proceeds at

law, and the plaintiff in *Greenwood* v. *Greenblatt*, 173 *Ga.* 551 (161 S. E. 135), proceeded in equity, the facts of the two cases are similar in many respects. We quote from the third headnote of that decision: "The wrong done by the defendants, if any, was a wrong done to the corporation. Primarily the right to recover against the defendants for the wrong done was in the corporation itself, and not in the stockholders. Stockholders can not sue at law the officers or directors of a corporation, or others, for damages for fraud, embezzlement, misfeasance, or gross negligence, whereby the property of the corporation is wasted, the stockholders are deprived of dividends, or their shares are depreciated or rendered worthless. . . Under certain circumstances a stockholder may, in his own behalf and in behalf of all other stockholders, maintain a suit in equity to redress or recover damages for wrongs done to the corporation by directors, officers, or others. Generally, where there has been a waste or misapplication of the corporate funds by officers or directors of the company or others, a suit to compel them to account for such waste or misapplication should be brought in the name of the corporation, unless it appears that the directors refuse to prosecute the suit, or that the directors are the parties who made themselves answerable for the loss. Where suit is brought by stockholders, the corporation should be before the court and should be made either a party plaintiff or defendant; and the suit must be brought for the benefit of the corporation." In the opinion Justice Hines sustained the law announced therein with sound reasoning based upon abundant authority. Under that decision and the authorities cited, we hold that the original petition was subject to general demurrer.

The amendment offered and rejected by the court substantially averred that the plaintiff incurred her alleged loss by being induced to sell her stock by reason of the "false and fraudulent . . misrepresentations by said defendants, and especially on the part of . . Cotton Mather, . . that the Gainesville Mather Company was insolvent and her stock · . . worthless," when "as a matter of fact said Gainesville Mather Company was solvent, and her stock of the value of par in the sum of . . $100 per share." Regardless of the fact that the original petition appears to be based on the theory that the defendants conspired to destroy the Gainesville Mather Company, and were successful

(paragraphs 16 and 18), and the amendment is based on the hypothesis that by their false representations and acts the conspirators induced the plaintiff to believe her stock was worthless, thereby causing her to sell it at a loss, when "as a matter of fact said Gainesville Mather Company was solvent and her stock of the value of . . $100 per share," our view is that said amendment is subject to precisely the same defect as the original petition, and could not possibly have cured the fatal malady of said petition. We therefore hold that the court did not err in rejecting the amendment, and in sustaining the general demurrer.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*