DYAL *v.* FOY & SHEMWELL INCORPORATED *et al.*

1. A bill of exceptions will not be dismissed because of the use of the words "Superior Court" instead of the words "Supreme Court" in the certificate of the judge of the superior court certifying the writ of error, where the bill of exceptions and all of the record required to be transmitted has been transmitted to this court just as it would have been if the certificate had properly ordered such transmission to the Supreme Court instead of to the "Superior Court of Georgia."

2. Where a deed given to secure a debt confers the power to advertise

and sell the realty conveyed by the security deed, but contemporaneously the grantee in such deed obligates himself by a contemporaneous written contract to extend the date of payment fixed by the security deed until a later date from that therein provided, the security deed and the contract extending the time of payment may be considered together. In cases of such contemporaneous agreements between the same parties and with relation to the same subject-matter, each writing may be used as a means of ascertaining the true intention of the parties, and may authorize a court to determine that the two separate papers, when construed together, constitute as a whole but one contract. Where it appears that the separate agreements are dependent each upon the other, each writing is but an intrinsically essential portion of the contract which, thus construed, embraces both papers.

3. In view of the rulings in the foregoing headnote, the discretion of the trial judge in granting an interlocutory injunction upon conflicting evidence was not improperly exercised.

No. 4243.    FEBRUARY 21, 1925.

Injunction. Before Judge Custer. Dougherty superior court. February 11, 1924.

An equitable petition was filed by Foy & Shemwell Incorporated against B. G. Dyal, Milner & Farkas, H. M. Furr, and Herald Publishing Co. The prayers of the petition necessary to be stated are, for injunction restraining Dyal and his attorneys, Milner & Farkas, from selling, and Herald Publishing Co. from making further publication of notice to sell, certain described real estate. At the interlocutory hearing there was introduced in evidence a deed made by H. M. Furr to B. G. Dyal, dated August 3, 1923, conveying the land in question, and reciting: "The consideration of this deed is that it is additional security for a loan made by G. B. Dyal to said H. M. Furr on certain purchase-money notes signed by P. Tomasello Jr., for a sawmill and equipment, located at Orange Bluff, Nassau County, Florida, on the St. Marys River. Said loan is evidenced by a further instrument in writing of even date herewith, to be recorded in Nassau County, Florida; said instrument sets out the full terms of said loan; and this security deed is made subject to all the terms and conditions of that agreement, and is given in connection therewith as additional security for said loan." Also, an instrument dated on the same day made between Furr and Dyal, containing the following stipulation: "In the event the said H. M. Furr should not pay the said Phœnix Mutual Life Insurance Company loan on its due date, i. e., October 1, 1926, together with interest at 8%, then the said B. G. Dyal

agrees to give the said H. M. Furr until October 1, 1928, in which to pay him the amount of said loan. If the said H. M. Furr does not pay the said B. G. Dyal the amount of said loan on October 1, 1928, then the said B. G. Dyal shall have the right and option of selling said lands and acquiring the legal title thereto, and fully and completely divesting the said H. M. Furr of all interest therein." The deed in question contains a power in favor of the grantee, "upon the debt hereby secured becoming due," to sell the property at public outcry before the court-house door of Dougherty County, after advertising the same once a week for four weeks in some newspaper published in the county.

The bill of exceptions recites that it was agreed that the Tomasello notes referred to in the deed and contract above quoted were all past due at the time of the publication by Dyal of the advertisement for sale of the land involved, and that it was further agreed that "the said B. G. Dyal had taken up the Phœnix Mutual Life Insurance Company loan referred to in the contract hereinafter more fully set out, and that said loan was secured by the usual form of security deed containing a power of sale, and that one of the interest coupons on said loan was due on October 1, 1923, and the said Dyal took up said loan which was duly transferred and assigned to him by" the insurance company on October 5, 1923. No other evidence was offered. The petition alleges that on September 7, 1923, Foy & Shemwell contracted to purchase the property from H. M. Furr, "subject to three liens or loan deeds, to wit: A first loan deed in favor of the Phœnix Mutual Life Insurance Company for approximately the sum of $8,500.00, second loan deed in favor of E. B. Young to secure the sum of $16,740.00, third loan deed in favor of said B. G. Dyal for the sum of approximately $14,000.00." It is also alleged that in the consummation of the transaction Furr stated to Foy & Shemwell that the contract made between himself and Dyal and referred to in the deed above quoted had been recorded in Nassau County, Florida, and that he exhibited a copy of a contract which he represented to be a copy of the contract as made by him with Dyal, some of the terms of which are alleged to be at variance with the terms of the contract above quoted; that on January 4, 1924, petitioners mailed to Dyal a check covering the interest due under the loan deeds to himself and Phœnix Mutual Life Insurance Company, which he refused; and

that Dyal had published notice of his intention to sell the land on the first Tuesday in February, 1924.

The court rendered judgment finding that "all questions raised by the petition and evidence, except as herein provided, are hereby decided in favor of the defendant. The contract [above quoted] is hereby held to be valid and binding and to be the contract referred to in the security deed from H. M. Furr to defendant, and that said contract and security deed constitute the entire contract between H. M. Furr and B. G. Dyal. Upon a construction of said contract and security deed it is held that by the terms of said instruments the said Dyal can not exercise the power of sale contained in said security deed prior to October 1st, 1928, and for this reason alone the defendant is hereby enjoined from proceeding with said power of sale until the further order of this court." Dyal sued out the writ of error.

*E. G. Baxter* and *Milner & Farkas,* for plaintiff in error.

*R. H. Ferrell* and *Lippitt & Burt,* contra.

RUSSELL, C. J. (After stating the foregoing facts.)

1. There is a motion to dismiss the bill of exceptions. It is predicated upon the ground, that, in that portion of the judge's certificate where the clerk is directed to transmit the bill of exceptions and a transcript of the record to this court, the word "Superior" was used instead of the word "Supreme," so that in this certificate it appears that the clerk of the superior court of Dougherty county was directed to transmit the record to the "Superior Court of Georgia." The motion to dismiss is based upon the proposition, that, inasmuch as the trial judge directed the transmission of the necessary papers to the "Superior Court of Georgia" (and there is no Superior Court of Georgia), the bill of exceptions and the transcript of the record are not properly before the Supreme Court of Georgia, and that this court, for lack of jurisdiction, can not consider the issues raised by the bill of exceptions. We can not agree with the contention of the defendant in error. It will be observed that in section 6145 of the Code of 1910 the form of the certificate which is essential to the validity of a writ of error has always contained two blanks. Unlike many other orders which the judge must frame entirely for himself, a stereotyped form of the certificate to a bill of exceptions has long been a part of our Code. Therefore the omission of the particular court to

which the writ of error is to be transmitted is significant, as indicating that it is for the judge, and not exclusively for the plaintiff in error, to determine whether a particular case shall be transmitted to the Supreme Court or Court of Appeals. From the similarity of the word "Superior" to the word "Supreme," and from the entire unlikeness of both these words to the term "Court of Appeals," it is apparent that the use of the word "Superior" is a mere clerical mistake, because there are only two courts in this State to which writs of error can be addressed. The liberality which has always been indulged by this court as to immaterial defects which might prevent the decision of essential questions if there were too strict an adherence to mere technicality has been marked, and should not be discontinued. Furthermore, the question is concluded by reference to section 6147 of the Code, which makes it the duty of the judge of the superior court "to see that the certificate is in legal form" before signing it; and this section further provides that "no failure of any judge to discharge his duty in this respect shall prejudice the rights of the parties by dismissal or otherwise." Ever since the passage of the act of 1893, from which this code section was taken, it has been held that where the certificate is in substantial compliance with the form prescribed, the writ of error will not be dismissed. *Scott* v. *Whipple,* 116 *Ga.* 211. Indeed it may be said, as to dismissal of bills of exceptions since the passage of the act of 1893, that the writ of error will not generally be dismissed if there appears in the certificate the essential statement that the recitals of fact in the bill of exceptions are true. The fact that the judge's certificate is not in the exact language prescribed by section 6145 is not ground for dismissing the writ of error. *Castleberry* v. *Parrish,* 135 *Ga.* 527 (2) (69 S. E. 817).

2. As appears from the statement of facts, the judge did not err in granting the interlocutory injunction. The plaintiff in error was proceeding, under the terms of a security deed of August 3, 1923, to exercise a power of sale of certain property which he had advertised to be sold on a named date. But it appears from the record that contemporaneously with the execution of this security deed there was a contract entered into on August 3, 1923, between the plaintiff in error and H. M. Furr, the debtor, who was the grantor in the security deed, by which, under certain contingencies,

Furr was given an extension of time, until October, 1928, to complete payment of some of the indebtedness which the deed was given to secure. Where a deed which is given to secure a debt confers upon the grantee in the deed power to advertise and sell the realty conveyed by the security deed for the purpose of enforcing the collection of the debt, and contemporaneously, on the same day, the grantee in the aforesaid deed enters into a contract whereby (in the event of a certain contingency specifically expressed in such obligation) he agrees to extend 'the maturity of the debt which the deed was given to secure until October 1, 1928, instead of October 1, 1926, the security deed and the extension contract may be construed together in order to ascertain the intention of the parties. Both the security deed and the contemporaneous contract above referred to relating to the same transaction, and concerning only the identical parties mentioned in each of the instruments aforesaid, each may be used to illustrate the meaning of the other. As affecting the power of sale conferred in the security deed, it is significant that said power of sale is limited by a provision in the deed itself, thus indicating that if either anteceded the other the contract guaranteeing an extension of time until October 1, 1928, probably preceded the execution of the security deed. The provision of the deed referred to is as follows: "Said loan is evidenced by a further instrument in writing of even date herewith to be recorded in Nassau County, Florida. Said instrument sets out the full terms of said loan, and this security deed is made subject to all the terms and conditions of that agreement, and is given in connection therewith as additional security for said loan." The trial judge was fully authorized to consider the security deed and the contract, from which we have just quoted, together, each as illustrative of the other. Under the evidence each writing properly may be considered as but intrinsically essential portions (each interdependent upon the other) of but a single contract embracing both the deed and the contemporaneous contract which imposed, under certain named circumstances, a limitation upon the exercise of the power of sale, which would have inhered but for the happening of the event for which provision was made in the contract simultaneously with, if not in advance of, the execution of the deed.

3. The crucial point in this case is whether Dyal agreed to the stipulation in the contract by which, under the circumstances

named therein, Furr should have until October 1, 1928, to discharge his obligation to Dyal. The plaintiff in error insisted that the contract introduced in evidence was not the contract which he made. Evidence was introduced in behalf of the defendants which authorized the judge to find that the contract was genuine. Regardless of the conflict in the evidence as to whether the contract which was introduced was the same as that really entered into between Dyal and Furr, and as to the facts and circumstances attending to show what notice, if any, Foy & Shemwell had of the terms of the contract between Dyal and Furr prior to the purchase of Fernland Farm by the former, it was the prerogative of the judge to comparatively appraise the weight of this testimony. We have already referred to the fact that the security deed refers to the contract executed on the same day with the deed. It is a corroborative fact of equal significance that the contract refers to the deed. In view of various facts and circumstances not necessary to be mentioned, but which are disclosed by the record, the judge was authorized to find both papers to be parts of one contract. The evidence authorizes the conclusion that the parties intended the contract and the deed to be Siamese twins, and such we hold them to be, so intimately joined and indissolubly connected that the one can not survive the destruction of the other. Where contracts are contemporaneous and relate to only one subject-matter (in this case the indebtedness of Furr to Dyal), the light which glows from one can always be used to illumine the other. But in this case the facts are so much stronger that the judge was well authorized to apply the motto, "United we stand, divided we fall," and to hold, upon the contested question as to the genuineness of the contract, that the paper entered upon the records of Nassau County, Florida, was an intrinsic part of the contract between the parties as a whole.        *Judgment affirmed. All the Justices concur.*