GREAT WESTERN OIL CO., Appellant, *v.* LEWISTOWN OIL & REFINING CO., Respondent.

(No. 6,849.)

(Submitted December 2, 1931. Decided December 22, 1931.)

[6 Pac. (2d) 863.]

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Appellant, submitted a brief; *Mr. Groene* argued the cause orally.

*Mr. C. W. Buntin,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, a domestic corporation, brought this action for an accounting against defendant, a Delaware corporation, doing business in Lewistown. By stipulation of the parties, the Honorable Jack Briscoe, former district judge, was appointed referee by the court to take testimony. After hearing, and

on June 21, 1930, the referee made findings of fact, conclusions of law, and recommendation of judgment for defendant for its costs. The court adopted the findings of the referee and entered judgment accordingly, and plaintiff has appealed.

From the record, it appears that Herbert A. Hover and Harry H. Schwartz on September 2, 1920, held an assignment of a certain oil and gas prospecting permit on certain government lands approved by the secretary of the interior. On that day they contracted with C. P. Ritter, trustee for the operation and development of the lands under the terms of which contract 30 per cent. of the gross royalties were to be paid to the United States, and 50 per cent. of the net proceeds to Hover and Schwartz. Under this contract, Ritter was to charge against the percentage of proceeds due to Hover and Schwartz a like percentage of the cost and expense of drilling, development, operation, maintenance, and equipment incurred by him. The contract provided that no administration expenses should be charged to Hover and Schwartz, nor "any expense of the following items of drilling equipment, to-wit: Boilers, engines, and any and all fishing tools, stems, jars, bits, rig irons, or casings, except such equipment as shall be retained at each and every well drilled for the purpose of the continued operation thereof." On September 18, the contract was modified so as to relieve Ritter of the necessity of drilling a free well as called for by the contract of September 2. On October 19, 1929, Ritter, trustee, made a contract with plaintiff, whereby plaintiff agreed to develop and operate the lands subject to the terms and conditions of the agreement of September 2, 1920, and to pay Ritter, trustee, 50 per cent. of the net proceeds, which contract contained the provision: "The same deductions against percentage to be paid the first party [Ritter, Trustee] shall be made as provided for in the certain contract entered into on the 2nd day of September, 1929, between Herbert A. Hover and Harry H. Schwartz, Jr., on the one part, and C. P. Ritter, Trustee, on the other." It also provided that plaintiff should advance all costs and expenses in the development and opera-

tion of the lands, and contained this clause: "The second party [plaintiff] shall not charge against the interest of the first party, or deduct from the proceeds of production, any expense of the following items of drilling equipment, to-wit: Boilers, engines, any and all fishing tools, stems, jars, bits, rig irons, or casing, except such equipment as shall be retained at each and every well drilled for the purpose of continuing operation thereof." By this contract, plaintiff agreed to drill the first well at its own cost and expenses, and to charge no part of the cost to Ritter, trustee, and agreed to pay Ritter, a trustee, a bonus of $10,000 out of first production. Also on the same day, October 19, 1920, the plaintiff made an assignment to C. P. Ritter, personally of an undivided one-half interest in the contract, whereby Ritter agreed to assume jointly with plaintiff the obligations imposed upon plaintiff by the contract of that date.

Pursuant to this contract, plaintiff undertook the operation and development of the lands and became heavily indebted and financially unable to continue operations. Ritter individually advanced money for the drilling of the first well, and was entitled to reimbursement from plaintiff. Also the bonus agreed to be paid him as trustee under the agreement of October 19, 1920, was never paid, and his right to receive one-half thereof from plaintiff was by assignments vested in the defendant. On June 10, 1922, Ritter personally and as trustee assigned to defendant all of his interest in the property and in the agreements of September 2, September 18, and October 19, and in and to all drilling equipment, casing, tools, and machinery.

On July 24, 1922, plaintiff entered into a contract with defendant which, by way of inducement, recites that Herbert A. Hover and Harry H. Schwartz, Jr., on September 2, 1920, made a contract with C. P. Ritter, trustee, for the development and operation of certain oil lands; that the contract provided for the reservation of 30 per cent. of the royalties to the United States government, and that the parties thereto were to share equally in the balance after the payment of the

royalty and operating expenses; that on October 19, 1920, Ritter made a contract with this plaintiff for the development and operation of part of the land, under the terms of which Ritter and plaintiff were to share equally in the interest of Ritter under the contract of September 2, 1920, and that upon the execution of this contract the interests of the parties stood as follows:

| Hover and Schwartz, | 50% working interest or 35% of gross. |
| Ritter | 25% " " " 17½% " |
| Plaintiff | 25% " " " 17½% " |

That thereafter Ritter transferred 20 per cent. of the working interest, or 14 per cent. of the gross, to H. F. Alexander, and 5 per cent. of the working interest, or 3½ per cent. of the gross, to Hover; that defendant purchased Alexander's interests and all rights and privileges of Ritter individually and as trustee. It recites that plaintiff, under the contract of October 19, 1920, is charged with the duty of operating the lands, but that it is financially unable to do so and desires to assign to defendant all of its rights and duties under that contract, which defendant is willing to assume.

After making the foregoing recitals, the agreement contains eleven subdivisions which, in substance and so far as material to an understanding of its provisions, are as follows:

*First.* Plaintiff assigns to defendant all of its rights, duties, and privileges under the contract of October 19, 1920, and defendant agrees to assume, undertake, and carry on the duty and work of operating the lands in accordance with the terms and provisions of the oil and gas lease granted by the United States to Hover and Schwartz in so far as the agreements apply and refer to the method and duties of operation.

*Second.* Defendant shall advance all expenses and costs incurred in the development and operations on the land, "it being understood that 55 per cent. thereof will be returned" to defendant by Hover and Schwartz, and "it is agreed that 25 per cent. of all costs and expenses of the drilling, development, operation, maintenance and equipment of said lands incurred by the party of the second part [defendant] in connection therewith, shall be charged against the proceeds

derived from the 17½ per cent. of the gross production belonging'' to plaintiff, and shall bear 6 per cent. interest until paid, with a proviso that such costs and expenses be paid out of production only.

*Third.* That defendant shall keep books of account, render monthly statements, and make apportionment of the percentage of proceeds and cost of operation monthly.

*Fourth.* Defendant has the right to purchase or market plaintiff's share of the oil.

*Fifth.* That as additional consideration moving to defendant for the burdens and obligations assumed by it in connection with the development and operation of the lands, and for relieving plaintiff from such obligations, plaintiff assigns to defendant 1¾ per cent. of the gross production from the lands, or 10 per cent. of plaintiff's interest therein.

*Sixth.* That, in the event of litigation involving the lands or production therefrom, defendant shall have the control of the litigation, with the right to charge one-half of the costs and expenses thereof to plaintiff.

*Seventh.* That plaintiff is indebted to defendant in the sum of approximately $12,500, which it is agreed shall be paid from plaintiff's share of the production.

*Eighth.* That plaintiff's share of the proceeds may be retained by defendant until all indebtedness of plaintiff to defendant is paid, except that defendant agrees to release to plaintiff $300 per month so long as the proceeds, belonging to plaintiff, together with its share of the refund or reimbursement money due from Hover and Schwartz on account of previous operations, shall not fall below a minimum of $1,000 per month, or $500 if the above proceeds reach $2,500 per month. That moneys so released shall be applied on indebtedness owing by plaintiff on account of prior operations with preference given to the indebtedness of plaintiff to the Commercial National Bank of Miles City, Montana. And in consideration of the release of this sum, plaintiff agrees to protect defendant against any foreclosure of a chattel mortgage held by that bank against the drilling equipment then used on the

land. All sums due from Hover and Schwartz, and the right to collect the same, and the use of all drilling equipment owned by plaintiff, are included under the assignment, and defendant has a lien on all sums due to plaintiff under the agreement until all the indebtedness of plaintiff to defendant has been paid.

*Ninth.* That part of the lands specifically described was acquired under an agreement dated December 20, 1920, between Herbert A. Hover and Harry H. Schwartz, Jr., and plaintiff, which was intended to supplement the contract dated October 19, 1920, between Ritter and plaintiff, and that such burdens and obligations in the way of payment, as set forth therein, are assumed by defendant under the assignment by plaintiff to defendant.

*Tenth.* Provision is made for cancellation of the contract in the event defendant failed to operate the property as required under the contract of October 19, 1930.

*Eleventh.* That the agreement shall run concurrently with the government lease to Hover and Schwartz, with the right of defendant to cancel and surrender the contract in the event that it is impossible to operate the land at a profit.

This contract will, for convenience, be hereafter referred to as the main contract.

The record discloses that defendant, pursuant to this contract, proceeded to develop and operate the lands, kept account of all operating expenses and of all sales of oil produced, made charges against the respective parties entitled to the proceeds pursuant to the main contract and the agreements therein referred to, and gave plaintiff credit for its share accordingly, to apply on the indebtedness, with interest, due from plaintiff to defendant. The referee found that pursuant to defendant's method of accounting, the plaintiff has nothing due it from defendant.

The evidence in the case is uncontradicted. The point of difference between the parties is the proper construction to be placed upon the main contract, and whether its terms are in anywise affected by the contracts referred to therein, and

hence, whether the method of accounting was correct in the light of the contract between the parties.

The record shows the total income for each year from 1922 to 1929, inclusive, from oil sales, and plaintiff's share thereof. In this the parties seem to be in agreement. But the principal bone of contention is this: What part of the operating ▮ expenses was properly chargeable to plaintiff? Plaintiff, in order to show a balance due it from defendant, takes the view that, under paragraph 2 of the main contract, it was chargeable with only 25 per cent. of 45 per cent. of the total operating expense. Using that as the basis of its computations, its counsel argue that there is a balance due it from the defendant. We cannot agree with plaintiff that it is chargeable only with 25 per cent. of 45 per cent. of the operating expense. In effect, paragraph 2 of the main contract provides that defendant shall advance all costs and expenses; that 55 per cent. will be returned by Hover and Schwartz, and 25 per cent. of all costs and expenses incurred by defendant shall be charged against plaintiff.

Plaintiff contends that since defendant under the agreement is to be reimbursed by Hover and Schwartz for 55 per cent. of the costs and expenses, defendant in fact incurs only 45 per cent. of the total costs and expenses, and for that reason plaintiff is chargeable with only 25 per cent. of the 45 per cent. This is not so. "Incur" means "to become liable for." (*Scott* v. *Tyler,* 14 Barb. (N. Y.) 202; *Flanagan* v. *Baltimore & Ohio R. Co.,* 83 Iowa, 639, 50 N. W. 60; *Beekman* v. *Van Dolsen,* 70 Hun, 288, 24 N. Y. Supp. 414; *Bank* v. *Eckles,* 19 Okl. 159, 91 Pac. 695; *Weinberg Co.* v. *Heller,* 73 Cal. App. 769, 239 Pac. 358.) Here defendant incurred, or became liable for, 100 per cent. of the costs. Under the contract plaintiff was chargeable with 25 per cent. of all costs incurred by defendant. The fact that defendant was to be reimbursed to the extent of 55 per cent. by Hover and Schwartz does not militate against the fact that it incurred 100 per cent. of the costs. Were plaintiff's contention to be sustained, as well

might it be said that defendant did not incur that which it had a right under the contract to charge back to plaintiff.

Defendant was justified in charging plaintiff with 25 per cent. of all costs and expenses, and was not limited to a charge of 25 per cent. of 45 per cent. of the expenses only.

Another point of difference between the parties is whether the contracts, other than the main contract, may be resorted to for the purpose of determining the proper charges to be made for operating expenses, and to ascertain the rights and obligations between plaintiff and defendant, and particularly whether, in view of paragraph 5 of the main contract, plaintiff was relieved of the obligation to pay its share of the bonus of $10,000 referred to in the contract of October 19, 1920, and its share of drilling operations for the first well, the right to receive which has passed to defendant by assignments.

Where, as here, the contract between the parties expressly refers to other contracts and is made subject thereto, they must be considered together. (*State Bank of Darby* v. *Pew,* 59 Mont. 144, 195 Pac. 852.) While recitals only cannot extend the contractual stipulations between the parties (13 C. J. 538), it cannot be said that the contracts referred to in the main contract are referred to merely by way of recital. They constitute a part of the contract between the parties, and measure the duties and obligations dealt with in the main contract. Here the main contract did not itself determine all of the rights, duties, and obligations of the parties, but, in measuring those rights, duties, and obligations, of necessity resort must be had to the contracts therein specifically referred to, the terms of which defendant was under obligation to carry out. The contracts referred to in the main contract were interwoven with the main contract. The wording of the main contract shows that the other contracts were "so intimately joined and indissolubly connected that the one cannot survive the destruction of the other. * * * The light which glows from one can always be used to illumine the other." (*Dyal* v. *Foy & Shemwell,* 159 Ga. 848, 126 S. E. 783, 785.)

The referee did not err in holding that the prior contracts were admissible in evidence.

As above noted, under prior contracts plaintiff was obligated to pay to Ritter a bonus out of its share of production and to reimburse him for a part of the expense of drilling the first well. Did the main agreement operate to relieve plaintiff of these burdens and cast them upon defendant? In other words, has defendant the right to charge against plaintiff's share of production, under the main agreement, the bonus and plaintiff's share of the cost of the first well due by plaintiff under prior agreements to Ritter?

The main agreement by way of recital states that: "Whereas, the party of the first part [plaintiff] is not now financially able to carry on and conduct said operations and desires to transfer, assign and set over unto said party of the second part [defendant] all of his operating rights, duties and operating privileges as specified and contained in said agreement last above referred to [agreement of October 19, 1920] and the said party of the second part is willing and desirous of assuming said operating rights and privileges and duties," etc.

The first paragraph of the contractual portion of the main contract states: "That the party of the first part hereby assigns, sells, transfers and sets over unto the said party of the second part all of the operating rights, duties and privileges held and possessed by the said party of the first part under the terms of said contract last above referred to [contract of October 19, 1920] and the said party of the second part agrees to assume, undertake and carry on the duty and work of operating said lands and premises." Under paragraph numbered "Fifth" of the main contract, plaintiff assigns to defendant 10 per cent. of its share of production as additional consideration "for the burden and obligations assumed by it [defendant] in connection with the development and operation of said lands, and for relieving the party of the first part from such obligations."

As above noted, the obligation of plaintiff to pay the bonus to Ritter was under the prior contract made payable from plaintiff's share of production. Had it been the intention of the parties to the main contract that plaintiff's share of production under the main contract should be relieved of this burden, apt language could have been, and under the circumstances we think would have been, chosen to effect that result.

To us, from the written contract alone, it seems that what plaintiff assigned to defendant, and what defendant assumed, was the obligation to perform the operating rights, duties, and privileges theretofore existing on the part of plaintiff, which plaintiff had become financially unable to perform. When defendant assumed and carried out those duties and brought the oil to the surface, the proceeds belonging to plaintiff were still subject to the charges imposed by the prior agreements, including the bonus due to Ritter and expressly made payable therefrom. Plaintiff asserts that under this interpretation there would have been no adequate consideration for the assignment by plaintiff to defendant of 10 per cent. of its share of production.

Defendant, under the main contract, agreed to look exclusively to plaintiff's share of production for the payment of the $12,500 indebtedness due from plaintiff to defendant, and in effect released plaintiff from any obligation to pay the debt except out of production. Also defendant was obligated under the main contract to advance all the costs and expenses in developing the land and to assume the hazard of being reimbursed out of production only, an obligation which theretofore rested with plaintiff. These considerations evidently prompted the assignment of 10 per cent. of plaintiff's interest to defendant, and were sufficient.

As to the refund owing to Ritter for advancements made by him for drilling the first well, being an indebtedness for prior operations, the main contract recognizes that plaintiff is still obligated therefor.

After providing that there shall be released to plaintiff a certain sum per month from production, paragraph numbered

"eighth" of the main contract expressly states: "It being understood that the moneys so released are to be applied by the party of the first part [plaintiff] to the discharge of the indebtedness heretofore contracted by and now existing against party of the first part in connection with its prior operations on said lands and premises." This item was chargeable against plaintiff's share of production.

With these items properly chargeable against plaintiff, the record supports the conclusion of the referee that plaintiff has nothing due it from the defendant.

The opinion promulgated on December 22, 1931, wherein the same conclusion was announced, is withdrawn and this one substituted therefor. The petition for rehearing is denied.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.

Rehearing denied January 14, 1932.