## 31180. HARDIN et al. v. GREAT NORTHERN NEKOOSA CORPORATION.

HALL, Justice.

The issue here involves the construction of farm and timber leases and a declaration of respective rights of the parties.

On May 9, 1960, Harry W. Peeples and Southern Land, Timber & Pulp Corporation entered into three contracts. One was a timber contract whereby Peeples

agreed to sell and Southern agreed to buy all timber and timber rights and one-half the mineral rights which Peeples owned on 3,970 acres of land. The term of the contract was for a period of 66 years. The second was a leaseback contract of 200 acres which has now expired and is not a matter of contention. The third contract was a farm lease whereby Peeples reserved the use of 320 acres of the land covered by the timber contract for farming purposes for the period of the timber contract. Under the terms of this contract, Peeples could relinquish his use of these 320 acres at any time during the contract term, whereupon Southern would pay Peeples $2.25 per acre per year for the remainder of the term. In a similar manner, after the first 10 years of the agreement, Southern could terminate, upon notice, Peeples' farm lease and would thereafter be obligated to pay the $2.25 per acre per year for the remainder of the contract term.

Subsequent to the making of these agreements, Harry W. Peeples died in 1965, and C & S Bank, as executor of his will, assumed the control and management of his estate. By devises made in Peeples' will, the appellants became vested with title to the contract lands, subject to the rights, title, and interests of the appellee under the said contracts. Also subsequent to the making of these agreements the appellee, Nekoosa, acquired and succeeded to all the rights, interests and benefits of Southern Land under the three contracts.

On May 9, 1970 Nekoosa exercised its option to lease back the 320 acres of farm land under the farm lease. At this time the executor relinquished and turned over to Nekoosa control of the farm lands. Since May 9, 1970 Nekoosa has continued to utilize the farm lands for farming purposes through tenants and sublessees who have utilized and received the benefits of the crop allotments allotted to these 320 acres by the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture.

In November of 1973, the Peeples estate was distributed and appellants became vested with title to the disputed lands. In July of 1974 the appellants complained that the appellee has no right to use the farm lease lands for any purpose other than the growing and cutting of

timber; that neither appellee nor its tenants have the right to utilize or benefit from the said crop allotments; and that the said crop allotments belong to the appellants. Appellee, on the other hand, contends that it is vested with an estate for years in the farm lands; that it has the right to use said lands for farming as well as for the growing and harvesting of timber; that during its estate for years appellee has the right to rent or lease such acreage for farming purposes to others; and that during the estate for years appellee is the "owner" of the 320 acres within the purview and meaning of the Agricultural Adjustment Act, and therefore appellee and its tenants are entitled to the use and benefits of the crop allotments.

These conflicting contentions of the parties resulted in the present controversy. In late 1974, appellants notified the appropriate county offices of the ASCS that neither appellee nor its tenants were entitled to the benefit of the crop allotments allocated to the farm lease acreage. As a result the ASCS offices refused to issue the allotment notices and quotas to either party until the controversy was settled. At this time portions of the farm acreage had been leased from appellee to several farming tenants, who were also concerned about the controversy and who hesitated to plant their crops for fear they would be unable to market them. Because of the urgency of the situation, the appellants and appellee negotiated an agreement for the 1975 crop year regarding the crop allotments. This agreement was only effective for the 1975 crop year, however, and was entered into without prejudice to the parties' respective rights with regard to other years. The same urgent situation again arose in 1976, at which time Nekoosa sought a declaratory judgment construing these contracts and declaring the rights of the parties, and an injunction against further interference with the tenants' right to farm the farm lease lands and receive the benefits of the crop allotments. After appellants answered appellee's complaint, appellee filed a motion for summary judgment. After a hearing, the motion was granted. The court found that appellee held an estate for years in the farm lands without limitation as to use, and was the "owner" of the lands for farming purposes under the Agricultural Adjustment Act which

entitled it to all the benefits of the crop allotments. The court also granted the appellee's request for injunctive relief and directed the appellants to perform their contractual obligations.

The trial court was correct in determining that the issue here is one of law. "Construction of written contracts, even if they are ambiguous, is a matter for the court and no jury question arises unless after application of applicable rules of construction the ambiguity remains." *Chalkley v. Ward,* 119 Ga. App. 227, 235 (166 SE2d 748)(1969). See also *Davis v. United &c. Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488) (1959). In our opinion the terms of the farm lease contract are unambiguous, but we arrive at a different interpretation from that given it by the trial court.

The timber contract, the leaseback contract which has now expired and the farm lease were all entered into between the same parties on the same day. Both the leaseback and the farm lease refer back to the timber contract and are applicable not to totally separate lands, but to portions of the timber contract lands. Where instruments are executed at the same time in the course of the same transaction, they should be read and construed together. *Dyal v. Foy & Shemwell,* 159 Ga. 848 (126 SE 783)(1925). Therefore as a bottom line we have three contracts entered into the same day between a landowner and a timber corporation. The primary purpose of the main contract was to transfer timber rights to the timber company. The other contracts were merely secondary—one (the leaseback contract which has expired) to provide for the reforestation of certain of these lands, the other to allow the owner of these lands to farm certain open area within the total timber contract acreage.

Given the subject matter of the main contract and reading the farm lease contract together with the main contract, any rights the timber company was to receive under these contracts, whether rights obtained under the main contract or any leaseback arrangement, were timber rights. While the appellee effectively exercised its option to lease the farm lands, its rights under the lease are to use these lands for the purpose of growing and

selling timber and not general farm purposes. It cannot use the land for general farming purposes nor is it entitled to any of the crop allotments allocated to the land by ASCS.

The trial court erred in granting a summary judgment in favor of the appellee.

*Judgment reversed. All the Justices concur, except Jordan, J., who dissents.*

SUBMITTED MAY 21, 1976 — DECIDED SEPTEMBER 8, 1976 — REHEARING DENIED SEPTEMBER 28, 1976.

*Blackburn & Bright, Oris D. Blackburn, Jr.,* for appellants.

*Tillman, Brice, McTier, Coleman & Talley, B. Lamar Tillman,* for appellee.

JORDAN, Justice, dissenting.

In my opinion the trial court was correct in holding that the appellee has an estate for years in the disputed acreage without limitations as to use. Under the clear terms of the contract the appellee had the right, after the expiration of ten years, to completely terminate the appellants' use of the land for farm purposes by payment of the stipulated price per acre.

The result reached by the majority is incongruous. It would require the appellee to pay the stipulated annual lease payments for the acreage while allowing the appellants to use the land repugnant to the rights given to the appellee under the contract.

I respectfully dissent.