## 33548. MICKEL et al. v. PICKETT.

BOWLES, Justice.

The case for decision by this court involves the granting of an interlocutory injunction by the Superior Court of DeKalb County, Georgia, whereby appellants, defendants below, were enjoined from proceeding to advertise and foreclose on certain real estate located in that county under the terms of a deed to secure debt previously granted to them by Pico, Inc., a corporation.

The underlying facts were shown by the introduction of an affidavit, numerous other documents, and by a limited amount of testimony of appellee, Roscoe Pickett. The controversy between the parties, and the decision of the trial court complained of arose as follows: On November 5, 1970, an agreement was entered into between appellants, herein referred to as Wachovia and Pico, Inc., whose sole shareholders were originally Roscoe Pickett, herein Pickett, and Leon Payne, Jr., herein Payne.

Under the terms of that agreement, Wachovia agreed to lend Pico up to $6,500,000, to be secured by real property owned or to be acquired by Pico, another corporation, Calero, Inc., and Pickett. In connection with the agreement several other documents were executed, including a promissory note in the face amount of $6,500,000, a deed to secure debt covering real property owned by Pico, herein referred to as the Pico property, which is the subject matter of the present action; a deed to

secure debt from Calero, Inc. on certain real property owned by that corporation; a deed to secure debt from Pickett on certain individually owned real property; and a guaranty agreement signed by Pickett and Payne as personal guarantors of the loan. The agreement set forth the terms upon which the loan would be disbursed and conditions upon which the various properties pledged as security for the loan would be released.

On February 24, 1971, in connection with a $1,000,000 disbursement under the agreement, there was an amendment to the deed to secure debt earlier executed by Pickett whereby he conveyed certain property he owned as security for the original note. A first modification of loan agreement was executed at that time, incorporating the additional security.

Specific and particular provisions covering procedures for release of the several parcels of secured property varying from parcel to parcel were set out in detail in the loan documents. The release provisions stated that no property would be released except incident to a sale which had been previously approved in writing; a survey delineating the property would be furnished; and set forth additional interest to be paid, substantial additional payments of principal, and related requirements.

Pico failed to timely make certain principal and interest payments and to meet certain tax obligations for the years 1971 through 1973. On May 3, 1973, Wachovia sent a letter in declaration of default and acceleration setting forth each default and commenced foreclosure. To that time Wachovia had never been requested to release any portion of the secured property in accordance with the original loan agreement, although certain requests for release had been made by both Pico and Pickett that had not met the loan document requirements. Wachovia had never approved in writing, as required by the loan agreement, any proposed sale involving release of any portion of the secured properties.

On May 8, 1973, in order to induce termination of the foreclosure proceedings, an agreement was reached whereby Pico made a principal and interest payment of $962,354.49 and Wachovia released from security the

original Pickett property. A new schedule of payments was agreed to in writing that included default provisions. Immediately, Pico defaulted in interest payments for April, May and June, 1973, and in a principal payment due July 1, 1973. A default letter was delivered and foreclosure proceedings were again commenced.

Thereupon Pico, Calero and Pickett filed a petition in the Superior Court of DeKalb County, Georgia, against Wachovia which was removed by the latter to the District Court of the United States.

On July 9, 1974, Wachovia, Pico and Pickett again reached a settlement agreement and a renewal of the loan by the giving of a new note and the entering into of an escrow agreement. All claims and counterclaims asserted in the lawsuit were dismissed. The new agreement provided that Pickett pay Wachovia $1,800,000 to apply to the principal and interest on the previous debt leaving an admitted principal balance of $4,730,842.90 besides interest due of $200,000. Pico transferred its equity in the Pico property to Pickett. Pico and Pickett executed and delivered to Wachovia a renewal note secured by real estate and confirmed that the lien of the Pico security deed continued to secure on a first lien basis the indebtedness evidenced by the note as renewed by the renewal note. Wachovia released the additional Pickett property and the Calero property as security.

At this juncture only the Pico property remained as security, the equity of redemption in which had been transferred to Pickett subject to Wachovia's deed to secure debt with first lien status and specifically agreed to by Pico and by Pickett individually. Wachovia also canceled Pickett's personal guaranty and returned it to him. Then the previous amended loan agreement was terminated and declared void.

A "First Supplement to Deed to Secure Debt" dated July 9, 1974, included the following language: "Pico, Pickett and Wachovia agree that from and after the date hereof (i) the security deed shall secure the indebtedness evidenced by the renewal note in addition to any other indebtedness now or hereafter secured thereby (ii) all references in the security deed to the 'Note' shall be deemed to refer to the renewal note,..." Pickett signed the

above document individually. In addition to the deed to secure debt being recorded, it was signed by Pickett in behalf of Pico and Pickett affirmatively recognized that the deed to secure debt was to continue to be security for the loan which was evidenced by the renewal note.

The escrow agreement, entered into by the parties at that time contained the following provision: "3. *The Pico Option.* Pickett hereby delivers to and deposits with Pioneer, and Pioneer hereby acknowledges receipt of, the original executed Warranty Deed (hereinafter referred to as the 'Pico Warranty Deed') made by Pickett as 'Grantor' therein in favor of Wachovia as 'Grantee' therein, dated of even date herewith and conveying fee simple title to the Pico Property, subject to the lien of the Pico Security Deed, as amended by the Security Deed Supplement; a copy of which Pico Warranty Deed is attached hereto as *Exhibit 'A'* and by this reference made a part hereof. Subsequent to the date hereof, in the event a default (hereinafter referred to as 'Default') occurs under the terms of the Renewal Note or under the terms of the Pico Security Deed, as supplemented by the Security Deed Supplement, Wachovia shall have the option (hereinafter referred to as the 'Pico Option') which option Wachovia shall under no circumstances be obligated to exercise, of *electing to accept from Pioneer delivery of the Pico Warranty Deed.* Pickett hereby authorizes and directs Pioneer to immediately, unconditionally and absolutely deliver to Wachovia the Pico Warranty Deed in the event and at such time subsequent to the date hereof as Wachovia delivers to Pioneer a statement executed by a duly authorized officer of Wachovia to the effect that a Default has occurred and is continuing and that accordingly Wachovia elects to exercise the Pico Option. Pioneer is authorized to return the Pico Warranty Deed to Pickett if and only if Pioneer is presented with (i) the original Renewal Note marked 'paid in full' by Wachovia and (ii) the original Pico Security Deed, as supplemented as aforesaid, duly canceled and satisfied by Wachovia. If a Default occurs and Wachovia elects not to exercise the Pico Option, Wachovia agrees to look only to the Pico Property and the rents and profits herefrom for the payment of the Renewal Note; and in the event the Pico Property is sold pursuant

to the Pico Security Deed or pursuant to a judgment obtained against Pico and/or Pickett, and if such sale does not produce an amount sufficient to pay the Renewal Note in full, Wachovia shall not seek and shall not be entitled to obtain any deficiency judgment against Pico and/or Pickett."

Thereafter Pico again defaulted on its loan repayment obligations for failure to make the payment due on January 1, 1975. As a result of this failure Wachovia requested of the escrow agent an immediate delivery of the escrow deed. Pickett disputed Wachovia's right to receive delivery of the escrow deed and thus, the escrow agent declined delivery.

Wachovia again declared the entire loan in default, accelerated the indebtedness and instituted foreclosure proceedings. Additionally, Wachovia filed a civil action in the Fulton Superior Court against Pico which was a suit on the renewal note. Summary judgment was granted Wachovia on the full amount sued for and this judgment was affirmed by the Court of Appeals in *Pico, Inc. v. Mickel,* 138 Ga. App. 856 (230 SE2d 488) (1976), and by this court in *Pico, Inc. v. Mickel,* 238 Ga. 218 (232 SE2d 841) (1977). It is undisputed that no payments have been made by appellee or any other person subsequent to the entry of this judgment. The judgment declares Pico indebted to Wachovia in the sum of $5,534,667.73 besides interest since May 10, 1975, ten per cent attorney fees, and includes a special lien on the property described in the deed to secure debt.

After judgment Wachovia continued its foreclosure efforts pursuant to the power of sale contained in the deed to secure debt on the Pico property. Thereupon, the Superior Court of DeKalb County entered an injunctive order in the previous action filed against Wachovia in that county which had been removed to the United States District Court and subsequently dismissed. That order was reversed by this court, and is reported in *Styers v. Pico, Inc.,* 236 Ga. 258 (223 SE2d 656) (1976).

On March 2, 1977, Pico filed a voluntary petition in bankruptcy in the United States District Court and the bankruptcy court entered an order declaring that Pico had no interest in the Pico property which is the subject

matter of this litigation. The bankrupt order also provided in part, ". . . and the stay of bankruptcy Rule 601 against lien enforcement does not affect the property described in Exhibit A." (The property here in dispute.) On August 31, 1977, the bankruptcy court entered an order discharging Pico as a bankrupt as respects the underlying personal obligation of that corporation under the Fulton County judgment.

In July, 1977, Wachovia again commenced its efforts to sell the property under the power of sale contained in the deed to secure debt held by it on the Pico property.

On the 28th day of July, 1977, plaintiff Pickett filed the instant action seeking again to enjoin defendant's foreclosure of the property in question. The complaint in the latter case is almost identical to the 1975 complaint which was dismissed at the time a new agreement was entered into. The complaint sought equitable and declaratory relief originally, but by amendment Pickett attempted to insert a claim for damages against Wachovia.

The trial court set the matter down for hearing to determine whether or not an interlocutory injunction should be issued. The evidence presented at that hearing consisted of documents which support the above facts, and oral testimony of the plaintiff Pickett, who testified briefly identifying a purchase agreement between Pico, Inc. and a firm named Kaiser-Aetna Company, et al. Pickett further testified that Pico, Inc. was a corporation wholly owned by him and that the contract was an agreement to sell the real property which is the subject matter of this lawsuit. He contended that the purchase agreement was $750,000 cash to the witness or to Pico and the payment of various indebtedness against the property, costs, etc., and payment of the indebtedness to Wachovia. He testified that Kaiser-Aetna had contacted Wachovia but they were unable to work out a completion of the purchase but he did not know why. He testified the contract was subject to approval of Kaiser-Aetna's board. He testified a majority of the board of Kaiser "told me" they were ready to close and pay Wachovia. The hearsay testimony was objected to by defendants but the trial judge failed to rule on the objection. He claimed damages

upwards of $750,000. He also testified he contacted Wachovia and attempted to work out some release price or some way to make a disposition of this property, making several trips and telephone calls but could never get an agreement. He didn't know if the board of representatives of Kaiser-Aetna ever approved any sale or any contract in writing. To the best of his knowledge the board did not. In later testimony he revised his damages to $3,892,930.68 without giving any basis for such a claim. Pickett gave a long dissertation on his inability to sell his property as he saw fit. Nowhere did he show by any evidence that he had ever complied with the release provisions contained in the loan documents, nor did his evidence show that he made any tender whatsoever to the defendant of the remaining sums due on the notes as revised, nor on the judgment obtained thereon. In addition to requesting a temporary and permanent injunction, he asked that the deed to secure debt held by Wachovia be declared null and void and that the land described therein be declared free and clear of all encumbrances. Further, he asked the court to determine what amount, if any, was due Wachovia from plaintiff in view of the fact that the debt had been discharged in bankruptcy.

On February 15, 1978, the trial judge issued an order and judgment, including findings of fact and conclusions of law, and a special order granting an interlocutory injunction against defendants instituting any further foreclosure proceedings of any nature whatsoever as to the real property which is the subject matter of the litigation.

From that order, Wachovia appealed to this court assigning as error (1) the trial court's granting the interlocutory injunction and enjoining defendants; (2) the court's granting the injunction because the trial court found there was no duty on the part of appellee to tender appellants the amount of the debt for which the property in litigation stands as security; (3) the trial court's finding that there was no debt and that appellee was not under any duty to tender to appellants any amount; (4) the trial court's granting an interlocutory injunction against appellants because that court found appellants had made an election of remedies which precluded appellants' right

to foreclose on the property in question; and (5) the trial court's granting an interlocutory injunction against appellants because it found there had been no accord and satisfaction of previous claims and that appellee could maintain a claim for damages against appellants. We reverse.

1. The complaint filed by plaintiff failed to allege tender and there is no evidence any tender was made. A borrower who has executed a deed to secure debt is not entitled to enjoin a foreclosure sale unless he first pays or tenders to the lender the amount admittedly due. *Cochran v. Teasley,* 239 Ga. 289 (236 SE2d 635) (1977); *Wright v. Intercounty Properties, Ltd.,* 238 Ga. 492 (233 SE2d 160) (1977).

2. The requirement to make the requisite tender is not altered by the fact that subsequent to the execution of the deed to secure debt containing the power of sale, equity of redemption of the grantor therein is transferred to a third party. *Thomas v. Stedham,* 208 Ga. 603 (68 SE2d 560) (1952); *Berry v. Government National Mtg. Assn.,* 231 Ga. 503 (202 SE2d 450) (1973). See Code Ann. § 37-104.

3. The purchaser of real property against which a deed to secure debt exists takes subject to all the rights of the holder of that deed where the purchaser has either actual or constructive notice of its existence. *Tomkus v. Parker,* 236 Ga. 478 (224 SE2d 353) (1976). Pindar, Georgia Real Estate Law § 21-49.

4. "The bankruptcy of the grantor in the original deed and his discharge in bankruptcy did not destroy the power contained in the original deed; for it was a power coupled with an interest." *Wallace v. Commercial Bank,* 159 Ga. 388 (2) (125 SE 845) (1924). See also *Thomas v. Stedham,* 208 Ga. 603 (69 SE2d 560) (1942); *Smith v. Farmers Bank of Glenwood,* 165 Ga. 470 (141 SE 203) (1927); *Potts v. McElroy,* 209 Ga. 244 (2), 247 (71 SE2d 612) (1952). Although the original debtor, Pico, Inc., may have been discharged from any in personam liability with respect to the judgment of indebtedness, such discharge did not cancel the title to the real estate held by Wachovia under its deed to secure debt, nor did such bankruptcy affect its power of sale contained therein.

5. The trial judge did not err in holding as a matter of fact that the plaintiff, Pickett, was not indebted to defendants in any sum, as indeed his personal liability had been theretofore released; but this finding could not affect the obligation of Pico, Inc. to Wachovia under the terms of its deed to secure debt which had not been released.

6. The judgment of the Superior Court of Fulton County, Georgia, determined the amount of the indebtedness of Pico, Inc. to defendants. That judgment was affirmed by the Court of Appeals in *Pico, Inc. v. Mickel,* supra, and the affirmance of that judgment by this court in *Pico, Inc. v. Mickel,* supra, as being an indebtedness limited to one enforceable against the property described in the deed to secure debt, and on which no payments were admittedly made after judgment, is binding on the trial court in this case. Any attempt by the trial court to determine that a different figure may be owed under the loan would be to no avail.

7. The trial court in its conclusions of law, and the appellee in his brief contend that, ". . .defendants made an election to demand delivery of the warranty deed to the property which is the subject matter of this litigation from the escrow agent with full knowledge of all of the facts, especially the fact that the escrow agent could refuse delivery of the warranty deed as long as a genuine controversy and dispute existed between the parties. The defendants having made an election with full knowledge of the fact that the delivery of the warranty deed to them would be refused under the terms of the escrow agreement are now bound by that election and are not entitled to proceed with any other course of action to obtain title to the real property." Appellee cites in support of their position *Hardin v. Great Northern Nekoosa Corp.,* 237 Ga. 594, 597 (229 SE2d 371) (1972), *Dyal v. Foy & Shemwell, Inc.,* 159 Ga. 848 (126 SE 783) (1924) and *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363 (203 SE2d 587) (1974).

These cases stand for the proposition that a party may contract away his remedies if he chooses to do so. We conclude, however, that the cases cited are not in point.

A careful reading of the escrow agreement which affords to defendants an option is set out above. Assuming that appellee's argument as to a valid election of remedies is sound, he cannot prevail on this point. It is undisputed that the warranty deed has not been delivered to the defendants, and although they may have requested the same, the option specifically reads, "electing to accept from Pioneer delivery of the Pico Warranty Deed." Plaintiff blocked delivery of the deed by the escrow agent Pioneer, and therefore, the plain words of the option have never been satisfied. By requesting delivery, defendants did not preclude themselves from pursuing another remedy available to them under the various contracts and under the laws of this state.[1] See *Oliver v. Slack,* 192 Ga. 7 (14 SE2d 593) (1941).

8. If Pico, Inc. had any claims arising out of its loan agreement with the defendants it was compelled to assert the same at the time it was sued on the indebtedness in the Superior Court of Fulton County, Georgia. Such claims would be compulsory counterclaims under the CPA § 13 (Code Ann. § 81A-113.) *Myers v. United Services Auto. Assn.,* 130 Ga. App. 357 (203 SE2d 304) (1973); 3 Moore's Federal Practice 13-300, 13-302, § 13.13.

On the other hand, if Pico, Inc. had any claims against the defendants not arising out of the subject matter of that suit, such claims would have been assets of Pico, Inc. at the time it surrendered in bankruptcy. No such claims were scheduled, nor does a stockholder in that corporation have a right to assert the same individually. *Smyly v. Smith,* 216 Ga. 529 (118 SE2d 188) (1961); *Greenwood v. Greenblatt,* 173 Ga. 551 (3) (161 SE 135) (1931); and *Kimbrough v. Gainesville Mather Co.,* 53 Ga. App. 735 (187 SE 169) (1936).

9. To enjoin a foreclosure proceeding a borrower must tender the amounts admittedly due even though it claims that the lender has breached some independent

---

[1] Code Ann. § 3-114 provides that, "A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them."

covenant in the contract. *Wright v. Intercounty Properties, Ltd.,* 238 Ga. 492 (233 SE2d 160) (1977); *Jordan Realty Co. v. Chambers Lumber Co.,* 176 Ga. 624 (168 SE 601) (1933). This would be equally applicable to the transferee of a borrower, if in fact the transferee could make such a claim.

We conclude that the trial judge erred in granting an interlocutory injunction against defendants.

*Judgment reversed. All the Justices concur.*

ARGUED MAY 9, 1978 — DECIDED
JULY 6, 1978.

*Hansell, Post, Brandon & Dorsey, Jule W. Felton, Jr., John G. Parker,* for appellants.

*Richard L. Parker, Gerald F. Handley, Hamilton Lokey,* for appellee.