60419. INTERSTATE FIRE INSURANCE COMPANY v. NATIONAL INDEMNITY COMPANY.

POPE, Judge.

National Indemnity Company (National) brought suit against Interstate Fire Insurance Company (Interstate) to recover losses which were sustained on two performance and payment bonds. After filing certain stipulations of fact, both parties moved for summary judgment. Interstate brings this appeal from the trial court's order which granted National's motion and denied Interstate's motion. We reverse with direction that summary judgment be entered for Interstate.

Interstate and National entered into an "Agreement of Reinsurance" and "Hold Harmless Agreement" effective May 1, 1971 under which two Atlanta insurance agencies were permitted to issue surety bonds in National's name; these bonds were 100% reinsured by Interstate. The purpose of this agreement was to enable Interstate

to engage indirectly in the issuance of bonds for federal government projects for which Interstate otherwise lacked authority from the United States Treasury Department. National in turn received 12-1/2% of the net premiums for all bonds so issued. Numerous surety bonds were issued under this agreement; however, by letter dated September 27, 1971 Interstate terminated the agreement as of November 1, 1971. National received the termination letter on September 29 and shortly thereafter notified the insurance agencies that no bonds could be issued in National's name after October 31, 1971.

Two payment and performance bonds are in issue in this litigation. The following facts in relation to these bonds were stipulated: the first bond was issued with regard to a federal government construction contract in Florida; the government issued its "invitation to bid" on October 8, 1971 setting forth that bids would be received and opened on November 3, 1971; "authorization requests" for a bid bond were transmitted to one of the insurance agencies on October 12, 1971; the bid bond was issued on October 22, 1971 and carried an effective date of November 3, 1971; the principal on the bid bond was awarded the contract which was executed on November 8, 1971; the agency issued a payment and performance bond showing a "date bond executed" as October 29, 1971; the government refused to accept this bond as originally issued since it showed an execution date prior in time to the underlying construction contract; at the government's request, this bond was reissued bearing an execution date of November 8, 1971.

The second bond was a payment and performance bond issued by one of the insurance agencies with regard to a waterway project in Mississippi; this bond was executed, invoiced and mailed to the producing agent on October 18, 1971; on November 5, 1971 the bond was returned with the notation "job to be re-let, please cancel the bond flat"; on November 12, 1971 the producing agent notified the insurance agency that the principal had been awarded the job and asked for the bond to be returned; the insurance agency remailed the bond as requested; the contract on this waterway project was executed on November 18, 1971. Subsequent to the issuance of the bonds, losses occurred which were paid by National.

"The trial court was correct in determining that the issue here is one of law. 'Construction of written contracts, even if they are ambiguous, is a matter for the court and no jury question arises unless after application of applicable rules of construction the ambiguity remains.' *Chalkley v. Ward,* 119 Ga. App. 227, 235 (166 SE2d 748) (1969) . . . In our opinion the terms of the [instruments executed by Interstate and National] are unambiguous, but we arrive at a

different interpretation from that given [them] by the trial court." *Hardin v. Great Northern Nekoosa Corp.,* 237 Ga. 594, 597 (229 SE2d 371) (1976).

The reinsurance treaty and the hold harmless agreement were executed on the same day, and the hold harmless agreement refers back to the reinsurance treaty. "Where instruments are executed at the same time in the course of the same transaction, they should be read and construed together." *Id.* at 597; *Rizk v. Jones,* 243 Ga. 545 (255 SE2d 19) (1979). The hold harmless agreement provided that "[t]he Interstate Fire Insurance Company, for its own benefit, requests the National Indemnity Company to issue bonds which are to be 100% reinsured by Interstate Fire Insurance Company. To provide such reinsurance, a treaty has been executed between the Companies providing for 100% reinsurance of these bonds. It is the intention of both Companies that losses arising from these bonds shall be paid by Interstate Fire Insurance Company, rather than by National Indemnity Company . . . Interstate Fire Insurance Company agrees to fully indemnify and hold National Indemnity Company harmless for any loss, cause, expense or damage which National Indemnity Company may become obligated to pay as a result of having agreed to issue such bonds *at the request of* Interstate Fire Insurance Company." (Emphasis supplied.) The reinsurance treaty provided that "[t]his Agreement shall remain in full force and effect on all business reinsured *prior* to the effective date of the cancellation of this Agreement until the termination or cancellation of such business . . ." (Emphasis supplied.)

Interstate's notice of termination was given in accordance with the provisions of the reinsurance treaty and effective on November 1, 1971. The facts as stipulated show that the bonds in dispute involved business actually reinsured *after* November 1, 1971 and hence cannot be said to have been issued at Interstate's "request." Therefore, the losses suffered by National on these two bonds did not fall within the purview of the reinsurance agreement. See *Walter E. Heller & Co. v. Color-Set, Inc.,* 152 Ga. App. 347 (262 SE2d 614) (1979); *U. S. Fidelity &c. Co. v. Schwalbe,* 64 Ga. App. 413 (13 SE2d 512) (1941).

The judgment of the trial court is reversed with direction that summary judgment be entered for appellant Interstate Fire Insurance Company.

*Judgment reversed with direction. McMurray, P. J., and Banke, J., concur.*

DECIDED FEBRUARY 12, 1981 —

*Edward E. Dorsey, Jesse W. Hill,* for appellant.
*Thomas S. Bentley, Edwin A. Tate,* for appellee.