J. A. WIGGINS and Dovie B. Wiggins, Plaintiffs,

v.

ENGELHARD MINERALS & CHEMICALS CORPORATION, Defendant.

Civ. A. No. 2408.

United States District Court, M. D. Georgia, Macon Division.

May 15, 1970.

**34**

G. Dean Booth, Jr., and Ellis C. Hooper, of Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., Milton A. Carlton, of Spivey & Carlton, Swainsboro, Ga., and Albert P. Reichert, Jr., of Anderson, Walker & Reichert, Macon, Ga., for plaintiffs.

Frank C. Jones, of Jones, Cork, Miller & Benton, Macon, Ga., and Irwin L. Evans, Sandersville, Ga., for defendant.

## OPINION

ELLIOTT, District Judge.

This is an action in which the owners of a 588 acre tract of land in Washington County, Georgia, seek to have a mining lease in favor of Engelhard Minerals & Chemicals Corporation ("Engelhard") terminated.

The lease was entered into on July 21, 1945 [1] and the original term of the lease was for ten years, subject, however, to the right of the lessee to renew the lease perpetually by paying a specified annual rental on or before May 13 of each year. The original agreement also provided that royalty payments for kaolin and clays mined would be due on May 13 of each year and that all sums paid as royalties would be "credited upon the annual rental due or to be paid, and no rental shall be due for any year in which Royalties are sufficient to pay the annual rental * * *"

No mining was done until 1963, and prior to that time the lease was amended three times. The third amendment (which was entered into on August 15, 1962) provided that instead of the lessee making an annual royalty payment based upon the number of refined long tons mined, as the contract originally provided, the lessee would make at least

1. Cecil M. Hodges, the original lessee, transferred the lease to Edgar Brothers Company (which is now Engelhard Minerals & Chemicals Corporation) on October 1, 1956.

semi-annual royalty payments, the amounts of which would be based upon the number of cubic yards mined (the number of cubic yards mined to be determined by cross-section surveys also made at least once each six months).

Neither the amendment of August 15, 1962, nor either of the previous amendments, changed the provision that all royalty payments be credited against the annual rental.

Mining was commenced by Engelhard in 1963, and Engelhard has placed in evidence copies of letters which were sent to the plaintiff lessors, J. A. and Dovie Wiggins ("the Wiggins") on July 20, 1964, July 27, 1965, July 28, 1966 and July 20, 1967. Each of these letters of transmittal contains a statement substantially identical to the following statement which appears in the letter of July 20, 1967:

"We understand that under our contract these royalty payments are to be credited upon the annual rental and, since they are more than enough to cover it, no payment will be required on May 13, 1968 to keep the contract in force."

In addition, each letter specifically stated that the royalty payments were for clay mined between January and July of the then current year.

The two checks which were mailed to the Wiggins on July 27, 1967 totaled $829.98 which was more than the minimum annual rent of $500.00 due on or before May 13, 1968. On January 30, 1968, Engelhard mailed the Wiggins checks totaling $175.04 and in the letter of transmittal, Engelhard's Manager of Land and Prospecting stated:

"We understand that under our contract these royalty payments, plus the royalty payment in July, 1967, are to be credited upon the annual rental and, since they are more than enough to cover it, no payment will be required on May 13, 1968 to keep the contract in force."

The Wiggins did not reply to the letter of January 30, 1968, nor, according to the record, did they respond to any of the other letters in which Engelhard expressed its understanding of the contract. In addition, they cashed the checks which were received in January, 1968, as well as the other checks received in July, 1964, 1965, 1966 and 1967.

On May 16, 1968, which was more than three and one-half months after receiving Engelhard's letter of January 26, 1968, the Wiggins wrote Engelhard and stated that the July 20, 1967 payment was for clays mined prior to May 13, 1967, and it was their contention that the only royalty payments which could be applied against the rent due on or before May 13, 1968 were those received in January of 1968. The position of the Wiggins was, and is, that only royalty payments representing payment for clay actually mined since May 13, 1967 were entitled to be credited against the annual rent due on or before May 13, 1968.

Engelhard did not accept the Wiggins' interpretation of the agreement and in October, 1968, the Wiggins filed suit in the Superior Court of Washington County, Georgia, in which they sought the following relief, to-wit:

1. To have the lease declared and adjudged terminated, because of Engelhard's alleged failure to pay the $500.00 annual rent which was due on or before May 13, 1968;

2. To have the lease declared null and void on the ground that the legal description of the property did not enclose any area and therefore was vague and indefinite so as to render the lease ineffectual; and

3. To have the lease declared null and void on the ground that it violates the rule against perpetuities.

The case was removed to this Court by Engelhard and after completion of discovery both parties filed motions for summary judgment.

We will deal with the contentions in the order above stated.

(1) The contention of the Wiggins that only that portion of the royalty payments received between May 13, 1967 and May 13, 1968 which represented payment for clays actually mined during that period was entitled to be credited against the annual rent (which was due on or before May 13, 1968) is without merit.

Paragraph 3 of the original agreement, which was not changed by any of the amendments, provides that "no rental shall be due for any year in which royalties are sufficient to pay the annual rental * * *" There is no requirement that the royalties be for clay and kaolin actually mined during the lease year in which payment is made. Furthermore, there is no provision in either the original agreement, or in any of the amendments, which require, or authorize, the prorating of royalty payments based upon the dates mining was done. The only reasonable construction of the contract is that the year in which payment is made, and not the year in which mining is actually done, is the controlling consideration. The original agreement specifically provided for both the annual rental payment and royalty payments, if any, to be made on the same date (May 13), but even though the payment dates coincided, it would have been possible for a royalty payment made on May 13 to have been partially in payment for clays mined prior to May 13 of the preceding year. This is so because the lessee was required to furnish the lessor a statement at the end of each month as to the quantity of clay and kaolin mined, and therefore the payment for kaolin mined during May (both before and after May 13), would not have been due until May of the following year. The amendment of June 9, 1953, provided that royalty payments would be made on May 1 of each year (rather than on May 13) and would cover "all clay or kaolin taken from the premises * * * to April 1, the month preceding". Here again, had clay or kaolin been mined while this amendment was in effect, a royalty payment made on May 13 might well have included payment for clay and kaolin mined between April 1 and May 13 of the preceding year. Finally, the amendment of August 15, 1962 provided for royalty payments to be made at least once each six months, and no provision was made for coordinating the cross-section surveys and royalty payments with the annual rental period established in the original agreement.

The Court, of course, has before it more than just the agreement as written, as there is substantial evidence in the record to show the actual construction placed upon the contract by the parties. As early as July, 1964 and at least annually thereafter, Engelhard advised the Wiggins that it construed the agreement as providing that payments made in July for clay mined between January and July were entitled to be credited against the annual rent due on or before May 13 of the next calendar year. If the Wiggins disagreed with this construction of the contract, it was incumbent upon them to so advise Engelhard. This they did not do, and they cannot now rely upon a different interpretation to the detriment of Engelhard.

Georgia Code Section 20–703 is plainly applicable to the facts of this case. It provides:

"Intention of one party known to the other.—The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning."

Georgia Code Section 38–120 is also applicable:

"Presumption arising from failure to answer letter.—In the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from the other to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts men-

tioned in the letter of his correspondent, and to adopt them."

Payments made by Engelhard in July, 1967 and January, 1968, having totaled more than $500.00, the royalties were sufficient to pay the annual rental and no additional payment was due on May 13, 1968.

■ (2) The contention that the lease is null and void because the legal description of the property is "vague and indefinite" is also without merit. The description set forth in the original agreement is sufficient to show the intention of the parties as to what property was leased and made its identification practicable. Andrews v. Murphy, 12 Ga. 431 (1852); Mitchell, Real Property in Georgia, p. 89, et seq. (1960).

"* * * if a surveyor with the deed before him can, with the aid of extrinsic evidence if necessary, locate the land and establish its boundaries, the description therein is sufficient." 23 Am.Jur. 2d, Deeds, Sec. 222 at p. 266. Engelhard introduced into evidence the affidavit of a registered land surveyor in which the surveyor testified that the property description contained in the original agreement was such that, with the aid of extrinsic evidence, he could locate the land described and establish its boundaries. The Wiggins introduced no contradictory evidence. Furthermore, even if the description contained in the original agreement had been inadequate, the subsequent amendments to the contract cured any problems which might have existed with respect to the property description. Both the amendments of June 9, 1953 and August 15, 1962 contained recitals to the effect that the property subject to Engelhard's right to mine was, and is, the same property described in the deed dated October 20, 1952 from J. A. Wiggins to Mrs. Dovie B. Wiggins.[2] The references to this deed made it clear what property was subject to the lease agreement, and these amendments served to reaffirm Engel-

hard's right to mine the Wiggins property.

■ (3) The lease does not violate the rule against perpetuities. Contrary to the contention of the Wiggins, the rights of the lessee vested immediately upon the execution of the lease and the fact that the lessee could defer mining by making annual rental payments did not alter this. See Smith v. Aggregate Supply Company, Inc., 214 Ga. 20, 102 S.E.2d 539 (1958). Also, the fact that the lessee had the perpetual right to renew the lease did not result in the lease violating the rule against perpetuities. Smith v. Aggregate Supply Company, Inc., supra; Williams v. J. M. High Co., 200 Ga. 230, 36 S.E.2d 667 (1946).

The Court concludes that there are no genuine issues as to any material facts and the motion of Defendant for summary judgment is sustained and the motion of Plaintiffs for summary judgment is denied.

---

2. J. A. Wiggins conveyed a one-half undivided interest in the property to his wife,

Mrs. Dovie B. Wiggins, on October 20, 1952.