69112. WOOD et al. v. ALL AMERICAN ASSURANCE
COMPANY.
(324 SE2d 483)

DEEN, Presiding Judge.

On February 20, 1973, the appellants, Betty Wood and Iva Sherrard, entered into an agreement with the appellee, All American Assurance Company, to act as servicing agents for insurance policies issued to the mortgagor borrowers of Scott Hudgens Realty and Mortgage, Inc., and/or its associated or affiliated companies. That contract specified that the servicing agents would receive "full commissions, both first year and renewal commissions," for as long as they desired to remain agents or "until such time as the account named above makes written request to the Company that the servicing agent named above no longer act as its servicing agent."

Subsequently, in 1973, Union America, Inc., which owned another mortgage lender called Western Mortgage Corporation (Western), acquired the loan portfolio of Scott Hudgens Realty and Mortgage, Inc.; the latter entity, however, continued to operate under its original name until 1975, when its name was changed to Western. Even after this acquisition, however, the appellants continued to service the policies held by the mortgagor borrowers of Scott Hudgens Realty and Mortgage, Inc./Western, until the fall of 1975, when Western discontinued the appellants' solicitation of Western's mortgagor borrowers for new policies to be issued by the appellee. (Thereafter, Western had the Atlanta Southern Agency solicit its debtors for new policies.) On October 28, 1976, Western formally requested of the appellee that the appellants no longer act as its servicing agents. Pursuant to that written request, on November 5, 1976, the appellee informed the appellants that effective December 1, 1976, their agency was terminated and no further commissions would be paid.

On December 21, 1976, the appellants commenced this action against the appellee, along with Western, Frank Robinson (formerly a vice-president of Western), John Lightner (also formerly associated with Western), and James Miller and B. C. Johnson doing business as the Atlanta Southern agency. The appellants alleged, inter alia, breach of contract and a civil conspiracy perpetrated by all the defen-

dants to deprive the appellants of their commissions due. The trial court granted the appellee's eventual motion for summary judgment, and this appeal followed. *Held*:

The trial court granted summary judgment for the appellee on the basis that the latter had the contractual right to terminate the appellants' servicing agency upon the written request of Western, as the successor to the account of Scott Hudgens Realty and Mortgage, Inc. We conclude that the facts of this case demand such a result.

The appellants' primary argument is that only Scott Hudgens Realty and Mortgage, Inc., could request termination of the servicing agency since it was the "account named above," and not Western. The contract actually identifies the account as Scott Hudgens Realty and Mortgage, Inc. and/or any affiliated or associated companies. While the term "affiliated or associated companies" would not literally encompass a company which has, in effect, taken over the initial company, it is clear and undisputed that all parties involved in this case dealt with Western on precisely those terms. Only when Western and the appellee attempted to exercise the negative aspects of the arrangement did the appellants decide that a controversy existed; even in much of their pleadings, the appellants refer interchangeably to Scott Hudgens Realty and Mortgage, Inc., and Western. In short, the "account" consisted of the body of business related to the loan portfolio originally maintained by Scott Hudgens Realty and Mortgage, Inc., and later assumed by Western, not merely the name of the institution that maintained the portfolio. Accordingly, pursuant to the contract between the appellants and the appellee, the appellee was actually required to terminate the appellants' service agency upon Western's request. Moreover, the appellants' complaint thus also fails against the appellee with regard to the theory of conspiracy, because the appellee could not conspire to do what it legally was entitled to do. *Ga. Power Co. v. Busbin*, 242 Ga. 612 (250 SE2d 442) (1978).

The appellants also contend that genuine issues of material fact exist at least over whether the appellants were entitled to continued receipt of renewal commissions and over whether they should have been given thirty days' notice of the termination. However, the contract clearly and simply provides that the appellants would be entitled to both first-year and renewal commissions as long as they chose to remain the servicing agents or until the account holder requested a change. We find no ambiguity in these plain and clear contractual terms, and the appellants thus were not entitled to any commissions upon the termination of their contract. *Globe Life &c. Ins. Co. v. Mapp*, 148 Ga. App. 565 (252 SE2d 5) (1978). Also, the appellants may not with parole evidence impose upon the unambiguous written terms of the contract, which do not require thirty days' advance no-

tice of termination, an alleged industry practice of thirty days' notice. OCGA § 13-2-2 (1); *Kellos v. Parker-Sharpe*, 245 Ga. 130 (263 SE2d 138) (1980).

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 23, 1984 —
REHEARING DENIED NOVEMBER 15, 1984 ▮

*Mark W. Crouch*, for appellants.
*Douglas D. Salyers, Kenneth L. Millwood*, for appellee.