72757. CAPITAL FORD TRUCK SALES, INC. v. UNITED STATES FIRE INSURANCE COMPANY, INC.

(349 SE2d 201)

DEEN, Presiding Judge.

An employee of appellant Capital Ford Truck Sales, Inc. (Capital), collided with an automobile while he was driving a company-owned wrecker on company business. A passenger in the other vehicle brought an action for personal injuries against appellant and the driver of the car in which she was riding. Capital called upon its primary insurer, Aspen Indemnity Corp. (Aspen), to defend the action, and Aspen undertook to do so, hiring attorneys to handle the case. Aspen subsequently became insolvent and went into receivership, however, and the law firm it had retained withdrew from the case. Capital thereupon called upon its secondary insurer, appellee U. S. Fire Insurance Co. (U. S. Fire), to provide a defense. Appellee denied coverage on the grounds that (1) whatever obligation it might have toward Capital as an insured extended only to amounts exceeding the $1,000,000 limit of Aspen's policy, and that (2) the obligation was not activated at all unless and until the liability exceeded $1,000,000. Capital then undertook its own defense in the personal injury action.

By leave of court, defendant/appellant Capital filed a third-party complaint against U. S. Fire, alleging breach of contract, tortious and bad-faith refusal to defend, and tortious and bad-faith denial of coverage, and seeking reimbursement for all defense costs and the amount of any adverse judgment that might be rendered, plus attorney fees and damages for bad faith. U. S. Fire moved for summary judgment on the third-party complaint, and the trial court granted the motion. On appeal, Capital enumerates several errors pertaining to the trial court's alleged misreading of the language of the policy issued to Capital by appellee U. S. Fire Insurance Co., so as to award summary judgment to appellee and absolve it of any duty to defend in the fact situation of the instant case. *Held*:

1. This appeal is from an award of summary judgment on the issue of whether, as excess insurer, appellee U. S. Fire had a duty to defend plaintiff/appellant Capital in a personal injury action, when the primary insurer, Aspen, after initially undertaking the defense pursuant to its insurance contract with Capital, became insolvent and

abandoned the defense. At the time of the collision, appellant maintained in full force and effect a liability insurance policy with Aspen, as primary insurer, in the amount of $1,000,000. Also in full force and effect at the time was a commercial comprehensive catastrophe liability policy issued by appellee, providing additional (or "excess": the parties to this appeal are sharply divided on this point) liability coverage up to $5,000,000 per occurrence. Both policies indisputably applied to the accident which gave rise to the underlying action. Also undisputed is the fact that appellant gave both insurers timely notice of the accident and the claims, and complied with the duties of cooperation, etc., imposed by both policies.

With respect to this appeal, the rights and duties of the parties are set forth in, and governed by, the liability insurance policy issued to Capital by U. S. Fire. See *Richmond v. Ga. Farm &c. Ins. Co.,* 140 Ga. App. 215, 221 (231 SE2d 245) (1976). The policy consists (in addition to declarations, schedules, and endorsements) of three sections: "Insuring Agreements," "Exclusions," and "Conditions." Pertinent portions of these sections are as follows:

"INSURING AGREEMENTS.

"I. Coverage. The Company [U. S. Fire] agrees to pay on behalf of the insured [Capital] the ultimate net loss in excess of the retained limit hereinafter stated [elsewhere stated as $1,000,000], which the insured may sustain by reason of the liability imposed upon the insured by law, arising out of an occurrence . . . , for: (a) Personal Injury Liability, (b) Property Damage Liability, or (c) Advertising Liability . . .

"II. Defense Settlement. With respect to any occurrence not covered, as warranted, by the underlying policies listed in Schedule A hereof [the sole policy listed is that with Aspen] or not covered by any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy except for the amount of retained limit specified in Item 4 (c) of the declarations [zero], the company shall: (a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . . (c) Pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; (d) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request; (e) reimburse the insured for actual loss of earnings . . . ; and the amounts so incurred, except settlements of claims and suits are payable by the company in addition to the applicable limit of liability of this policy . . . ;

"III. Definitions . . . 7. 'Occurrence.' With respect to Coverage 1

(a) and 1 (b) 'occurrence' means either an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons . . . during the policy period. . . .

"V. Retained Limit — Limit of Liability. With respect to Coverage 1 (a), 1 (b) or 1 (c), or any combination thereof, the company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of: (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof [the Aspen policy], and the applicable limits of any other insurance collectible by the insured; or (b) an amount as stated in Item 4 (C) of the declarations [zero] as the result of any one occurrence not covered by the said policies or [*sic*] insurance; and then up to an amount not exceeding the amount as stated in Item 4 (A) [$5,000,000] of the declarations as the result of any one occurrence. . . . In the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A by reason of losses paid thereunder, this policy, subject to the above limitations, (1) in the event of reduction, shall pay the excess of the reduced underlying limits; or (2) in the event of exhaustion, shall continue in force as underlying insurance.

"EXCLUSIONS. [None applicable to the case at bar].

"CONDITIONS . . . G. Loss payable. Liability of the company with respect to any one occurrence shall not attach unless and until the insured, the company in behalf of the insured, or the insured's underlying insurer, has paid the amount of retained limit. . . .

"H. Bankruptcy or insolvency. Bankruptcy or insolvency of the insured shall not relieve the company of any of its obligations hereunder.

"I. Other insurance. If other collectible insurance including other insurance with this company is available to the insured covering a loss also covered hereunder . . . the insurance hereunder shall be in excess of and not contribute with, such other insurance.

"J. Underlying insurance. If underlying insurance is exhausted by any occurrence [see "Definitions," supra], the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where [as in the instant case] this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another carrier.

"K. Subrogation. The company shall be subrogated to the extent of any payment hereunder to all the insured's rights of recovery therefor. . . .

"O. Maintenance of underlying insurance. It is warranted by the insured that the underlying policies listed in Schedule A [i.e., the

Aspen policy] . . . shall be maintained in force during the currency of this policy, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences happening during this policy period. In the event of failure by the insured to so maintain such policies in force or to meet all conditions and warranties subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force. Notice of exhaustion of underlying insurance shall be given the company within 30 days of such exhaustion."

Georgia law, like that of a number of other jurisdictions, holds that an insurer's duty to pay and its duty to defend are separate and independent obligations. *Richmond v. Ga. Farm &c. Ins. Co.,* supra; *Home Indem. Co. v. Godley,* 122 Ga. App. 356 (177 SE2d 105) (1970); *Loftin v. U. S. Fire Ins. Co.,* 106 Ga. App. 287 (127 SE2d 53) (1962); *National Surety Corp. v. Dunaway,* 100 Ga. App. 842 (112 SE2d 331) (1959). See also *Palmer v. Pacific Indem. Co.,* 74 Mich. App. 259 (254 NW2d 52) (1977); *Ladner & Co. v. Southern Guar. Ins. Co.,* 347 S2d 100 (Ala. App. 1977); *Sloan Constr. Co. v. Central Nat. Ins. Co.,* 269 S. C. 183 (236 SE2d 818) (1977).

Although most of the cases dealing with the respective duties of the primary and the excess insurer[1] concern either disputes between insurers of two different vehicles or two different drivers (or between the driver's insurer and the insurer of the owner of the vehicle) or disputes as to whether a certain item of property is covered, the principle is the same: if the facts bring the occurrence wholly, partially, or even arguably within the policies' coverage, then each insurer (whether primary or otherwise) has a duty to defend the action, regardless of whether liability, in whatever amount, is ultimately established. See, e.g., *Associated Petroleum Carriers v. Pan American Fire &c. Co.,* 117 Ga. App. 714 (161 SE2d 411) (1968); *National Surety Corp. v. Dunaway,* supra; *U. S. Fidelity &c. Co. v. Watson,* 106 Ga. App. 748 (128 SE2d 515) (1962). See also *Dochod v. Central Mut. Ins. Co.,* 81 Mich. App. 63 (264 NW2d 122) (1978); *Lees v. Smith,* 363 S2d 974 (La. App. 1978); *Seaboard Indus. v. Monaco,* 258 Pa. Super. 170 (392 A2d 738) (1978).

While there is no way to know in advance of trial of the main action whether appellant will be found liable or, if so, what the amount of the judgment would be (particularly in a case in which the

---

[1] The "additional insurance" and "excess insurance" distinction urged by appellee does not figure in any of the cases cited; in most cases, the term "excess" is routinely employed to denote whatever coverage exists beyond that afforded by the primary insurer, without any discussion as to whether the coverage is "additional" or "excess" in the sense urged by appellee here.

plaintiff has prayed for no specific amount in damages), it appears to be clear that under Georgia case law U. S. Fire would have a duty in any event to undertake to defend. In *Richmond v. Ga. Farm &c.,* supra, this court held at 217, " 'Where an insurer denies coverage under a particular policy and seeks to relieve itself of its obligation to defend a pending suit against an insured . . . there is such immediacy of choice imposed upon it as to justify an adjudication by declaratory judgment.' *Nationwide Mut. Ins. Co. v. Peek,* 112 Ga. App. 260, 263 (145 SE2d 50). . . . A proper and safe course of action for an insurer in this position is to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor," together with a stay of the main case pending resolution of the declaratory judgment action.

The key to a definitive resolution of the issue of U. S. Fire's obligation to defend *vel non* lies in the interpretation of certain policy language, e.g., the term "collectible": does this term modify "underlying insurance" (i.e., the Aspen policy) as well as "other insurance," or does it modify only the latter? See Insuring Agreements, II, V (a) and (b); note especially Conditions, I, where the word "collectible" occurs in conjunction with the word "available,"[2] and Conditions, J, where U. S. Fire expressly obligates itself, under certain conditions, to "assume charge of the settlement or defense. . . ."

The cited policy provisions, when read together, appear to result in an ambiguity, inasmuch as it cannot be said as a matter of law that the terms of the insurance contract unequivocally absolve appellee of any duty to defend Capital in the underlying personal injury action. Ordinarily, of course, "[t]he construction of a contract is a question of law for the court," OCGA § 13-2-1, the cardinal principle of construction being the ascertainment of the parties' intention. OCGA § 13-2-3. Where there appears to be an ambiguity in the contract, however, a jury question may arise, since resolution of the apparent ambiguity may require a consideration of evidence (including parol evidence) regarding the facts which reflect the intention of the parties in entering into the contract. See, e.g., *Tidwell v. Carroll Bldrs.,* 251 Ga. 415 (306 SE2d 279) (1983); *Andrews v. Skinner,* 158 Ga. App. 229 (279 SE2d 523) (1981); *Taylor Freezer Sales Co. v. Hydrick,* 138 Ga. App. 738 (227 SE2d 494) (1976). Questions of fact, of course, are the province of the jury. *Crestlawn Mem. Park v. Scott,* 146 Ga. App. 715 (247 SE2d 175) (1978).

The existence or non-existence of an ambiguity is itself a ques-

---

[2] Appellee relies upon *Garmany v. Mission Ins. Co.,* ___ F2d ___ (Case No. 85-8199, decided April 1, 1986) (11th Cir. 1986) to support its position regarding interpretation of the policy. We find the facts of *Garmany* to be so different from those of the instant case as to make *Garmany* inapposite here.

tion of law for the court. *Salvatori Corp. v. Rubin,* 159 Ga. App. 369 (283 SE2d 326) (1981). If the court determines that there is an ambiguity, this does not automatically give rise to a jury question, however. *Kennedy v. Brand Banking Co.,* 152 Ga. App. 47 (262 SE2d 177) (1979). At this point it becomes the duty of the court to attempt to resolve the ambiguity by applying the rules of construction set forth in OCGA § 13-2-2. See, e.g., *Andrews v. Skinner,* supra; *Interstate Fire Ins. Co. v. Nat. Indem. Co.,* 157 Ga. App. 516 (277 SE2d 802) (1981). It is only when the ambiguity remains after the statutory rules have been applied that the issue becomes one for the jury. *Travelers Ins. Co. v. Blakey,* 255 Ga. 699 (342 SE2d 308) (1986). See *Travelers Ins. Co. v. Blakey,* 177 Ga. App. 1 (338 SE2d 451) (1985). See also *Garner v. Metro. Life Ins. Co.,* 152 Ga. App. 242 (262 SE2d 544) (1979).

The particular statutory rules applicable to the contract in the instant case are found in OCGA § 13-2-2, subsections (1), (4), and (5). These subsections deal respectively with the admissibility of parol evidence not to "add to, take from, or vary a written contract," but to explain "an ambiguity, latent or patent"; the preference for a construction which will "uphold a contract in whole and in every part"; and the principle that where "the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation" (here, U. S. Fire). Where a written contract incorporates an ambiguous condition (the most notable here being such phrases as "in excess of," "other collectible insurance," etc.), parol evidence is admissible to aid in construing it. *Columbia Nitrogen Corp. v. Dean's Power Oil Co.,* 136 Ga. App. 879 (222 SE2d 602) (1975). Where an apparent ambiguity is resolved in such a way as to result in the negation of the underlying purpose of the contract, such a construction would be disapproved. OCGA § 13-2-2 (4); *U. S. Fidelity &c. Co. v. Gillis,* 164 Ga. App. 278 (296 SE2d 253) (1982).

Moreover, in applying the rule stated in subsection (5), supra, we have consistently held that an insurance contract is to be strictly construed against the insurer and in favor of the insured. *Alley v. Great American Ins. Co.,* 160 Ga. App. 597 (287 SE2d 613) (1981); *Peachtree Roxboro Corp. v. U. S. Cas. Co.,* 101 Ga. App. 340 (114 SE2d 49) (1960); *American Cas. Co. v. Callaway,* 75 Ga. App. 799 (44 SE2d 400) (1947). Our courts have further held that the insurer, having affirmatively expressed coverage in broad promissory terms, has a duty to define any limitations or exclusions clearly and explicitly. *Alley v. Great American Ins. Co.,* supra at 600. In the instant case the insurer made express provision in the policy for insolvency of the insured but not of the provider of underlying insurance, for maintenance of underlying insurance by the insured, and for assumption of defense obligations in case of reduction or exhaustion of underlying insurance; see

Conditions, H, J, and O. Why not also include a provision regarding the underlying insurer's insolvency?

When one obtains a liability insurance policy, his purpose is to shield himself from the necessity of either defending or paying a claim; as long as he keeps the insurance in force, he expects his insurers to perform these duties, and if the primary insurer will not or cannot do so, then the duty devolves upon the secondary or excess insurer, whatever the reason for the primary insurer's default. See, e.g., *Wallace v. Va. Surety Co.,* 80 Ga. App. 50 (55 SE2d 259) (1949); *American Cas. Co. v. Callaway,* supra. In *Loftin v. U. S. Fire Ins. Co.,* supra, this court opined at 293-294: "We must assume that the insurer's undertaking to defend was intended to afford benefits to the insured [by, e.g., actually providing a defense.] . . . If the insurer intended otherwise, it could have made its intent clear and unmistakable. . . . The burden is on the insurer to show . . . an exception to coverage." A contract will not be so construed as to allow the draftsman to take advantage of his own error unless there is a clear indication that to do so is in accord with the parties' intentions in entering into the contract. *National Surety Corp. v. Algernon Blair, Inc.,* 114 Ga. App. 30 (150 SE2d 266) (1966), rev'd on other grounds, 222 Ga. 672 (151 SE2d 724) (1966). Surely appellee cannot seriously contend that the various provisions of the insurance policy should not be read *in pari materia. Paul v. Paul,* 235 Ga. 382 (219 SE2d 736) (1975). Moreover, it is undisputed that Capital at all times maintained the underlying insurance in full force, and that it was in full force at the time of the incident giving rise to this case. "[I]t is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. The policies are prepared by the company by experts and legal advisers acting in the interest of the company, and the insured has no voice in the selection and arrangement of the words employed." *Atlas Assurance Co. v. Lies,* 70 Ga. App. 162, 164 (27 SE2d 791) (1943); cited in *Kytle v. Ga. Farm &c. Ins. Co.,* 128 Ga. App. 109, 112 (195 SE2d 787) (1973).

The record *sub judice* does not reveal affirmatively whether or not the trial court went through the entire three-step process prescribed in *Blakey,* supra: (1) determining that an ambiguity exists, (2) applying the statutory rules of construction, and (3) deciding whether or not the ambiguity persists. In the absence of affirmative evidence to the contrary, we must presume that the proceedings below were conducted in a proper manner. *Stubbs v. Central Bank of Ga.,* 7 Ga. 258 (1849). However, our own review of the insurance contract in the light of the particular facts of this case, and our own application of the statutory rules of construction to this particular contract, persuade us that the trial court erred as a matter of law in finding that

the document unambiguously relieves appellee of any duty to defend in the fact situation here.

Under OCGA § 9-11-56 (c), on a motion for summary judgment the movant has the burden of showing affirmatively that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. Moreover, when the movant is the defendant, he has the additional burden of piercing the plaintiff's allegations and affirmatively negating at least one essential element of the plaintiff's case. See, e.g., *Ray v. Ga. Farm &c. Ins. Co.*, 176 Ga. App. 776, 780 (337 SE2d 779) (1985). Scrutiny of relevant provisions of the insurance policy, supra, indicates that appellee has failed to meet these statutory requirements. We must therefore reverse the award of summary judgment.

2. The court notes that appellant has filed a motion that certain exhibits attached to and referenced in appellee's brief, which allegedly contain material not properly a part of the record on appeal because not a part of the trial court record, be stricken. It is well settled that upon appellate review the court can consider only those matters that are properly a part of the record, not matters which have been raised only in the parties' briefs. See *Whatley's Interiors v. Anderson*, 176 Ga. App. 406 (336 SE2d 326) (1985); *Desai v. Safeco Ins. Co.*, 173 Ga. App. 815, 817 (328 SE2d 376) (1985); *Southern Discount Co. v. Heide*, 144 Ga. App. 481 (241 SE2d 599) (1978); *Turner v. Watson*, 139 Ga. App. 648 (229 SE2d 126) (1976). Upon examining the record transmitted to us by the superior court, we find that the allegedly extraneous material is not included in that record and therefore, to the extent that it is not properly a part of the record, order it stricken.

*Judgment reversed. Benham and Beasley, JJ., concur.*

DECIDED SEPTEMBER 2, 1986 —
REHEARING DENIED SEPTEMBER 25, 1986 

*J. Arthur Mozley, Eric T. Johnson*, for appellant.
*W. Wray Eckl, Georgia L. Schley*, for appellee.