**Mrs. Helen Stinson SMITH, As Trustee Under the Will of George F. Stinson by Order of Wilkinson County Superior Court of September 18, 1978, Plaintiff,**

v.

**FREEPORT KAOLIN COMPANY, et al., Defendants.**

**Civ. A. No. 84–241–1–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

May 27, 1988.

Manley F. Brown, Macon, Ga., William H. Stanhope, Atlanta, Ga., Charles R. Adams, III, Ft. Valley, Ga., for plaintiff.

George C. Grant, Macon, Ga., for defendants.

1. The original signatories to the lease executed two materially identical leases nearly one year apart, one in September of 1945 and the second in September of 1946. The lease recorded in

## ORDER

OWENS, Chief Judge.

This matter is before the court on the parties' cross motions for partial summary judgment. The focus of this dispute is a mining lease originally executed in September of 1945 between landowner Mr. I.B. Stinson, predecessor in interest of plaintiff Helen Stinson Smith, and Owen and Shepherd, an entity composed of two individuals, Mr. S.R. Owen and Mr. C.M. Shepherd. Defendant Freeport Kaolin Company, and subsequently defendant Engelhard Corporation, eventually acquired the mining rights described in the lease, and both corporations have conducted mining operations on the property described therein. This instant disagreement centers on a provision in the lease establishing the amount of royalties due the lessor, now Mrs. Smith. The parties agree that, at least initially, the interpretation of the lease is a question of law properly ruled upon by this court. To further such interpretation, the parties have submitted well-prepared pleadings. Having read and considered those materials, this court now makes the following findings of fact and conclusions of law.

### Findings of Fact

1. In a lease recorded in Book 77, Page 133, in the Office of the Clerk of the Superior Court of Wilkinson County, Georgia, I.B. Stinson conveyed certain mining rights to Owen and Shepherd.[1] The disputed provision of this lease states as follows:

> The party of the second part [Owen and Shepherd] agrees to pay to the party of the first part [I.B. Stinson], his heirs and assigns, the sum of .15 cents for each and every ton of said bauxite, clay or other ore moved from said lands said ton to weight (sic) 2240 pounds, said weight shall be ascertained from the records of the railroad companies shipping said material....

Exhibit B to Plaintiff's Memorandum in Support of Motion for Partial Summary

Wilkinson County was executed in 1946. Neither the parties nor this court attaches any significance to the recording of one lease rather than the recording of the other.

Judgment, Docket No. 82; *see also* Exhibits A and B to Exhibit 1 attached to Brief in Support of Defendant Freeport Kaolin Company's Motion for Partial Summary Judgment, Docket No. 84.[2]

2. Owen and Shepherd executed a number of leases containing language identical to the provision in the Stinson lease. *See* Exhibit E attached to Plaintiff Smith's Reply Brief in Support of Motion for Partial Summary Judgment, Docket No. 90.

3. Owen and Shepherd executed a sublease on or about September 29, 1945, conveying the kaolin mining rights on the Stinson property to P.W. Martin Gordon Clays. *See* Exhibit C to Exhibit 1 attached to Defendant Freeport Kaolin Company's Motion for Partial Summary Judgment. This contract, which had a term of twenty-five years with an option provision for an additional five years, provided that the subtenant pay "the sum of twenty cents (20c) for each ton of 2240 pounds of refined clay and bauxite (railroad weight) removed from said land by [subtenant]." No mining occurred pursuant to the sublease, and it expired by its own terms no later than September of 1975.

4. George F. Stinson and Anita M. Stinson inured to the interests of the original landowner and lessor, Mr. I.B. Stinson. Plaintiff Helen Stinson Smith has succeeded George and Anita Stinson and is the holder of record title to the property at issue in this case.

5. Defendant Freeport Kaolin Company succeeded to the mining rights originally belonging to Owen and Shepherd and conducted mining operations on the Stinson property beginning in 1977 and continuing until 1985. In 1985, defendants Freeport and Engelhard entered into an agreement by which Freeport assigned to Engelhard its interest in the Stinson property. Defendant Engelhard conducted mining operations in the property until 1986.[3]

6. From the inception of mining in 1977 until and through January of 1982, Freeport made monthly royalty payments to George F. Stinson and his successors, Mrs. Anita M. Stinson and Mrs. Helen Stinson Smith.[4] Included with the monthly payments transmitted to the various payees were explanatory letters indicating that the payments were based upon the total number of "long tons (2240 pounds per ton) of refined clay removed." Exhibits G1–G53 to Exhibit 1 attached to Motion of Defendant Freeport Kaolin Company for Partial Summary Judgment, Docket No. 83. These checks have been cashed, and they amount to $45,244.92.

Following the installation of new equipment which accurately measured the amount of dry crude kaolin pumped by pipelines from the Stinson property, Freeport in a letter to plaintiff offered to pay royalties on the basis of crude or unrefined kaolin transported through the pipeline, and, in fact, Freeport tendered subsequent payments to plaintiff based thereupon. *Id.* at G–63 and at Exhibit H. This offer to pay royalties based upon crude tonnage alerted plaintiff to the fact that she and her predecessors had been receiving royalty payments based upon refined tonnage, and it caused plaintiff to question the propriety of such payments. The dispute which ensued resulted in this lawsuit, and the royalty payments by both Freeport and Engelhard since December of 1982 have not been cashed but have been paid into the court. *Id.* at Exhibit 1, p. 13.

---

2. Defendant Engelhard agrees with defendant Freeport's interpretation of the lease and supports Freeport's motion for partial summary judgment as well as moving on its own for summary judgment. In defendant Engelhard's motion it has adopted the facts, the law and conclusions stated in its co-defendant's motion and memoranda. *See* Motion of Defendant Engelhard Corporation for Partial Summary Judgment, Docket No. 85 and Brief in Support thereof, Docket No. 86.

3. Engelhard was not initially a party to this action. This court added Engelhard as a party defendant by its Order of September 23, 1987.

4. The payments began on October 13, 1977, and they were made monthly thereafter to George F. Stinson until his death. Beginning in August of 1978 and continuing monthly thereafter until August of 1980, payments were made to Anita M. Stinson, executrix of George F. Stinson. Upon the death of Anita Stinson, the payments were made to Mrs. Helen Stinson Smith, Trustee under the will of George F. Stinson.

7. "Crude kaolin as mined and removed from the ground contains approximately 22% moisture by weight. It takes at least 1.5 tons of dry crude kaolin to produce 1 ton of refined kaolin." *Id.* at Exhibit 1, p. 12, and at Exhibit 2, p. 3. "The railroad weight of refined kaolin which is shipped to the customer can be converted to wet crude tons of clay by mathematical calculation...." Exhibit C, p. 5, attached to Plaintiff Smith's Reply Brief in Support of Motion for Partial Summary Judgment, Docket No. 90.

### Conclusions of Law

1. "The construction of the provisions of this lease, as with other contracts, is generally one for the court to determine as a matter of law." *Peachtree on Peachtree Investors v. Reed Drugs,* 251 Ga. 692, 694, 308 S.E.2d 825, 828 (1983), citing O.C.G.A. § 13–2–1.[5] As such, the interpretation of this written contract regarding the mining of certain materials from the Stinson property is "properly subject to disposition by summary judgment." *Sims' Crane Service, Inc. v. Reliance Insurance Company,* 514 F.Supp. 1033, 1036 (S.D.Ga.1981), *aff'd* 667 F.2d 30 (11th Cir.1982).

2. "Under Georgia law whether a contract is ambiguous is to be determined by the court." *Kaiser Aluminum & Chemical v. Ingersoll-Rand Co.,* 519 F.Supp. 60, 71 (S.D.Ga.1981), citing *Stone Mountain Scenic Railroad, Inc. v. Stone Mountain Memorial Association,* 230 Ga. 800, 199 S.E.2d 216 (1973); *see Georgia R.R. Bank & Trust v. Fed. Deposit Ins.,* 758 F.2d 1548, 1551 (11th Cir.1985)("[t]he existence vel non of an ambiguity is a question of law for the court"). "Ambiguity in a contract may be defined as duplicity, indistinctness, an uncertainty of meaning or expression." *Salvatori Corp. v. Rubin,* 159 Ga. App. 369, 372, 283 S.E.2d 326, 328 (1981) (citations omitted).

3. However, no construction is "required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Merrill Lynch, Pierce, Fenner & Smith v. Stidham,* 506 F.Supp. 1182, 1186 (M.D.Ga. 1981) (citations omitted), modified for other reasons, 658 F.2d 1098 (5th Cir. Unit B. 1981).[6] Consequently, "[w]here the contract language is definite and unambiguous, the Court will not resort to surrounding circumstances to interpret the agreement." *Kaiser Alumimum & Chemical,* 519 F.Supp. at 71 (citations omitted).

4. If the court determines that an ambiguity exists, "it becomes the duty of the court to attempt to resolve the ambiguity by applying the rules of construction set forth in O.C.G.A. § 13–2–2." *Capital Ford Truck v. U.S. Fire Ins. Co.,* 180 Ga. App. 413, 418, 349 S.E.2d 201, 206 (1986).

5. "The cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13–2–3, quoted in *Georgia R.R. Bank & Trust,* 758 F.2d at 1551.

> The courts are to afford greater regard to the clear intent of the parties than to any particular words which they may have used in expressing their intent. However unskillfully prepared a particular instrument or agreement may be, the courts are to discover and give effect to the intent of the parties if possible. Similarly, words in a contract are to be construed in the sense in which they are mutually employed by contracting parties, irrespective of the proper and logical meaning those words might otherwise carry.

*Georgia R.R. Bank & Trust,* 758 F.2d at 1551 (citations omitted). This "cardinal rule of construction" becomes applicable, however, only upon a determination that the contract is ambiguous. *Id.* at 1552. "Where parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident or mistake, be conclusively presumed that the writing contains the entire

---

**5.** "The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact." O.C.G.A. § 13–2–1.

**6.** All opinions of Unit B. of the former Fifth Circuit have been adopted as binding precedent upon this court. *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

contract...." *Andrews v. Skinner*, 158 Ga.App. 229, 231, 279 S.E.2d 523, 526 (1981). *But see, In Re Smith*, 436 F.Supp. 469, 475 (N.D.Ga.1977) (court's duty to ascertain intent of parties applies irrespective of whether contract is ambiguous or not).

6. If an ambiguity remains after application of the appropriate rules of construction, a jury question is presented. *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 342 S.E.2d 308 (1986).

7. A contract may be unenforceable due to the uncertainty, vagueness or indefiniteness of its terms. An agreement with such a defect may be cured by the parties' subsequent conduct. The general rule in Georgia is as follows:

> A contract which is originally and inherently too indefinite may later acquire precision and become enforceable by virtue of the subsequent acts, words, or conduct of the parties.... Thus, the objection of indefiniteness may be obviated by performance and acceptance of performance.

*Pine Valley Apts. Ltd. v. First State Bank*, 143 Ga.App. 242, 245, 237 S.E.2d 716, 719 (1977), quoting 17 Am.Jur.2d 418, Contracts § 78; *see Self v. Smith*, 98 Ga. App. 876, 107 S.E.2d 721 (1959); *M.W. Buttrill, Inc. v. Air Conditioning Contractors, Inc.*, 158 Ga.App. 122, 279 S.E.2d 296 (1981).

8. Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

9. Rule 56(c) mandates the entry of summary judgment, upon motion, against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of any element essential to his case and upon which he will bear the burden of proof at trial. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Movant may discharge this burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. The court, however, must review the evidence and all factual inferences in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984).

### Discussion

■ Defendants first contend, as does plaintiff, that no ambiguity is present in the contract. Defendants contend that the inclusion of the phrase "said weight shall be ascertained from the records of the railroad companies shipping said material" evidences or discloses the parties' intent to base payment on only those tons actually shipped. Defendants assert that this reference necessarily confines payment to refined kaolin because in almost all cases only the refined product was shipped by railroad.

In the alternative, defendants correctly argue that a determination by this court that the contract is ambiguous does not necessarily mandate the submission of the question of its construction to a jury. *"Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains." Travelers Insurance Co.*, 255 Ga. at 700, 342 S.E.2d at 309 (emphasis in original). Defendants contend that any ambiguity which might be present in the contract can be resolved by the court using the applicable rules of construction provided in O.C.G.A. §§ 13–2–2 and 13–2–3. Such construction, defendants argue, based upon consideration of the circumstances attendant to and surrounding the written contract, upon recognition of the prevailing industry custom, upon consideration of other provisions in the contract and upon consideration of the subsequent performance of the contract in terms of royalties paid and accepted, would result in a finding that the parties intended that payment be rendered based upon the re-

fined kaolin shipped by railroad companies to the ultimate customer.

Finally, defendants argue that any ambiguity in the contract which might be present, or an unambiguous provision originally providing for payment on the basis of crude tonnage, has been cured or altered by the payment of royalties to, and the acceptance of royalties by, the successors in interest to Mr. I.B. Stinson, especially considering the language in the letters which accompanied each payment. In addition to the proposition stated previously, that a contract unenforceable due to uncertainty, vagueness or indefiniteness may be cured by the parties' subsequent conduct, defendants cite in support two Georgia statutes and the case of *Wiggins v. Engelhard Minerals & Chemicals Corporation*, 328 F.Supp. 33 (M.D.Ga.1970). O.C.G.A. § 13–2–4 provides that "[t]he intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." O.C.G.A. § 24–4–23 provides as follows:

> In the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from another to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent and to adopt them.

In *Wiggins, supra*, plaintiffs sought to have terminated a mineral lease in favor of Engelhard Minerals & Chemicals Corporation. The lease provided that royalty payments for kaolin and clay mined on the property would be due on a date certain of each year and that "all sums paid as royalties 'would be credited upon the annual rental due or to be paid, and no rental shall be due for any year in which Royalties are sufficient to pay the annual rental.'" *Wiggins*, 328 F.Supp. at 34. Subsequent amendments, the court found, did not change the provision requiring that all royalty payments be credited against the annual rental. Plaintiffs contended, however, that only royalties representing payment for clay actually mined since the designat-

ed date were properly credited against the next year's annual rent.

The court found this contention without merit, finding no requirement in the contract that royalties credited against the annual rent be only those royalties paid for clay or kaolin actually mined during the lease year in which payment was made. In essence, then, the court refused to permit plaintiffs in *Wiggins* to read into the contract a requirement not expressly included therein.

Defendants in the case *sub judice* rely heavily upon *Wiggins* because the court in that case examined letters from Engelhard to plaintiffs which set forth Engelhard's construction of the disputed provisions in the contract. The court then cited the predecessors to the above quoted Georgia statutes, present day sections 13–2–4 and 24–4–23, and stated that if plaintiff had "disagreed with [Engelhard's] construction of the contract, it was incumbent upon them to so advise Engelhard. This they did not do, and they cannot now rely upon a different interpretation to the detriment of Engelhard." *Id.* at 36.

Plaintiff Helen Stinson Smith vigorously contends that the lease is not ambiguous and that the court need look no farther than the terms of the lease to determine that royalties should have been paid on the basis of crude tonnage mined rather than refined tonnage shipped to customers. Various cases, considered in light of the definition of an ambiguity in a contract as duplicity, indistinctness, or an uncertainty of meaning or expression, provide this court with guidance in determining whether the Stinson lease is ambiguous.

Georgia courts have found ambiguities in the following cases: *Tidwell v. Carroll Builders, Inc.*, 251 Ga. 415, 306 S.E.2d 279 (1983) (agreement is ambiguous because Carroll's entitlement to certain proceeds comes about according to one portion of the agreement at the time Tidwell shall convey fee simple title to said premises to any third party while in another portion of the agreement Carroll's entitlement ripens upon the subsequent sale of said premises

to a third party, thus speaking in terms of both conveyance of title and sale of premises); *Andrews v. Skinner,* 158 Ga.App. 229, 279 S.E.2d 523 (1981)(ambiguity obvious because the release identifies the collision as having occurred on two separate dates); *Capital Ford Truck v. U.S. Fire Ins. Co.,* 180 Ga.App. 413, 349 S.E.2d 201 (1986) (not clear which phrase the term "collectible" modifies, thus creating an ambiguity as to whether the policy's provisions absolve insurance company of duty to defend).

No ambiguity was found in the case of *Wood v. All American Assurance Company,* 172 Ga.App. 655, 324 S.E.2d 483 (1984). The court found that the contractual terms plainly and clearly provided for payment to agents of "full commissions, both first year and renewal commissions," only as long as the agents remained with the company or "until such time as the account" requested their replacement as servicing agents. *Id.* at 656, 324 S.E.2d at 484–85. In addressing another issue more pertinent to the instant case, the court said that the appellants could not "with parole (sic) evidence impose upon the unambiguous written terms of the contract, which do not require thirty days' advance notice of termination, an alleged industry practice of thirty days' notice." *Id.* at 656, 324 S.E.2d at 485. *See also Wiggins,* 328 F.Supp. at 36–37 (court refused to read into contract a provision not expressly included therein).

This court determines that the contract in this case is not ambiguous. The provisions are neither contradictory nor conflicting. The contract clearly and unambiguously requires that the mining company pay "for each and every ton of said bauxite, clay or other ore moved from said lands" and that the tonnage "shall be ascertained from the records of the railroad companies shipping said material." Defendants would have this court read into the contract the modifier "refined" based upon the supposed industry custom of shipping to the ultimate consumer only refined kaolin. Such a reading would dilute the significance of the phrase "each and every ton" and would by adding a word omitted by the parties negate the meaning of "bauxite, clay or other ore." *See* discus-

sion *infra.* This court will not read into the contract a provision or a word not expressly included therein, *see Wood, supra,* nor will this court permit defendants to impose upon the contract a supposed custom which is inconsistent with the express terms of the contract. *See Church v. Trailmobile, Inc.,* 99 Ga.App. 750, 109 S.E.2d 636 (1959) (custom may not be considered part of an express and unambiguous contract when that custom is inconsistent with terms contained therein).

An examination of certain relevant terms in the disputed provision makes clear that the contract requires payment for the materials in their unrefined conditions. "Bauxite" is defined as "an *impure mixture* of earthy *hydrous* aluminum oxides and hydroxides...." Webster's Third New International Dictionary 188 (1971) (emphasis added). The dictionary defines "clay" as follows:

[A] widely distributed collodial lusterless earthy substance, plastic when moist but permanently hard when fired, that is composed of primarily decomposed igneous and methamorphic rocks rich in the mineral feldspar in the form of crystalline grains less than .002 mm in diameter, *whose essential constituents are kaolinite and other hydrous[6] aluminous minerals and fine particles....*

*Id.* at 418 (emphasis added) (footnote added). "Ore" is defined as follows: "a natural or native mineral that can [usually] be profitably mined and treated for the extraction of any of its constituents; a source from which valuable matter is extracted; [and] an *unrefined condition or material.*" *Id.* at 1589 (emphasis added). The dictionary defines "kaolin" as a type of clay, *i.e.,* "a fine [usually] white clay resulting from extreme weathering of aluminous minerals (as feldspar) that contains kaolinite as its principal constituent...." *Id.* at 1232. Each of the contractually identified materials is an impure mixture of various substances or an unrefined material from which certain constituents are extracted. Further, clay, and kaolin as a type of clay, both naturally contain a substantial percentage of moisture. To insist that the

contract should be read to mean refined kaolin or dry kaolin is to insist upon a reading contrary to the unambiguous language of the contract.

Defendants' assertion that the contractual phrase which bases payment on the tonnage as ascertained from the records of the railroad companies necessarily narrows the prior phrase which requires payment for each and every ton of materials moved is without merit. First, though the parties disagree as to the exact ratios involved, it is a fact that a formula exists, one which existed at the time this contract was executed, by which one can compute the quantity of unrefined materials excavated by reference to the quantity of refined kaolin shipped. Considering that accurate measurement was difficult if not impossible on site, this court finds it logical that the shipping weights would have been selected as a means of calculating the tonnage of the mined materials.

Second, the court notes that "ascertain" does not mean "equal." "Ascertain" means "to make (a person) certain, sure, or confident" and "to find out or learn for a certainty." Webster's Third New International Dictionary 126 (1871). The provision easily could have been written in a manner conclusively establishing the shipping weights as the exact tonnage for which the landowner should be paid. The contract does not so provide.

This court's determination that the contract as written is not ambiguous and that the contract requires payment for each and every ton of crude ore moved from the land makes it unnecessary for the court to consider defendants' arguments regarding the construction of an ambiguous contract. However, there remains for consideration defendants' arguments regarding the effects of the subsequent performance of the contract.

Defendants erroneously rely upon the premise that a contract unenforceable due to uncertainty, vagueness or indefiniteness becomes enforceable based upon the parties subsequent conduct. This contract, as explained above, is not of the type to which

this principle of law applies, for this contract is not one that is unenforceable as written. The contract contains a price certain for each ton of certain identified materials moved from the Stinson property, and it contains a means of ascertaining the tonnage. This contract is neither uncertain, vague nor indefinite.

■ Defendants' arguments in reliance on the letters mailed from Freeport and Engelhard to the payees and the construction placed on the contract contained in those letters are likewise unavailing. O.C. G.A. § 13–2–4, which provides that "the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning," is not applicable unless the contract is ambiguous. *Lovable Company v. Honeywell, Inc.*, 431 F.2d 668, 675 (5th Cir.1970),[7] citing *Holloway v. Brown*, 171 Ga. 481, 483, 155 S.E. 917, 918 (1930). This court's finding that the contract is unambiguous makes this section inapplicable. The court further notes that the statute contemplates an expression of meaning contemporaneous with the execution of the contract, and it does not indicate that an expression of meaning by one party years after such execution imposes any obligation upon the other party to object to such an expression. In *Wiggins, supra,* the court employed subsequent letters to bolster the court's determination that the contract as written and as amended was susceptible to only one reasonable interpretation. The letters were used neither as a means of construing an ambiguous contract nor as a means of modifying an existing one.

■ O.C.G.A. § 24–4–23 provides that one failing to answer a letter which in good faith requires an answer is presumed to admit the propriety of matters mentioned therein. This presumption is a rebuttable presumption of fact, not an irrebuttable presumption of law. *Georgia Health Care, Inc. v. Loeb*, 151 Ga.App. 350, 259 S.E.2d 734 (1979) (presumption arising from failure to answer a letter is not one of law but is one of fact and is subject to

**7.** In *Bonner v. Pritchard,* 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted a binding precedent the cases of the old Fifth Circuit decided prior to October 1, 1981.

explanation). Further, the statute is applicable only "where two parties have carried on a mutual correspondence in reference to a particular matter, and one of the parties has written a letter to the other making statements concerning a subject of which the latter has knowledge, and which the latter would naturally deny if true." *Lyons Mfg. Co., Inc. v. Cedarbaum*, 174 Ga.App. 218, 219, 329 S.E.2d 559, 561 (1985); *see Merry v. Georgia Big Boy Management, Inc.*, 135 Ga.App. 707, 218 S.E.2d 694 (jury charge based on statute proper where evidence established mutual correspondence). Defendants may not rely upon their unilateral actions to establish a mutual correspondence.

■ Even if a mutual correspondence was established, this court could not properly grant defendants' motion for partial summary judgment based on this statute because the failure to answer the letters raises only a rebuttable presumption of fact. Defendant Freeport, through the affidavit of Mr. Joe H. McKenzie, Jr., an employee of Freeport at the time the letters in question were mailed, contends that it had explained to George F. and Anita M. Stinson the practice of paying royalties based on refined kaolin and that they understood and agreed to this practice. *See* Affidavit of Joe H. McKenzie, Jr., pp. 6–7, attached as Exhibit 1 to Motion of Defendant Freeport Kaolin Company for Partial Summary Judgment, Docket No. 83. Plaintiff contends that George F. and Anita M. Stinson were in ill health and suffered from poor hearing; thus, she argues, they were incapable of understanding either the significance of the letters transmitted by Freeport or the explanations offered of such by Mr. McKenzie. *See* Affidavit of Helen Stinson Smith, pp. 2–4, attached as Exhibit A to plaintiff Helen Stinson Smith's Reply Brief in Support of Motion for Partial Summary Judgment, Docket No. 90. This factual dispute, which essentially creates the issue of whether Freeport and the Stinson successors knowingly modified the contract, is not one properly resolved by the court on motion for summary judgment.

In conclusion, this court has determined that the contract as written plainly and unambiguously requires defendants herein to pay plaintiff for materials moved from the Stinson property based upon the crude tonnage excavated rather than upon the refined tonnage shipped. In accordance with this finding, the court hereby GRANTS plaintiff's motion for partial summary judgment on the question of ambiguity and DENIES defendants' motions for partial summary judgment on the same question. Further, this court has determined that defendants' arguments of law regarding performance of the contract and the conclusive effect of certain statutes either are not applicable to the instant case or do not, in this factual setting, presumptively vary the terms of the written contract. Thus, defendants' motions for partial summary judgment based thereon are likewise DENIED.

SO ORDERED.